Joyce JONES, Martha L. Edwards, Lou Cooper and Vincent E. Jackson, individually and as class representatives, Plaintiffs–Appellees,

v.

FORD MOTOR CREDIT COMPANY, Defendant–Appellant.

No. 03–7398.

United States Court of Appeals, Second Circuit.

Argued: Oct. 10, 2003.

Decided: Feb. 5, 2004.

Daniel H. Schlueter, Atlanta, Ga. (Thomas M. Byrne, Valerie S. Sanders, Sutherland Asbill & Brennan LLP, Atlanta, Ga.; John H. Beisner, Neil K. Gilman, Rachel A. Shapiro, O'Melveny & Myers LLP, Washington, D.C., on the brief), for Defendant–Appellant.

Darnley D. Stewart, New York, N.Y. (Daniel L. Berger, Bernstein Litowitz Berger & Grossman LLP, New York, N.Y.; Michael E. Terry, Terry & Gore, Nashville, Tenn.; Gary Klein, Grant & Roddy, Boston, Mass.; Kevin Greco, Sandak Friedman Hennessey & Greco, LLP, Stamford, Conn.; Wyman O. Gilmore, Grove Hill, Ala.; Clint W. Watkins, Brentwood, Tenn.; Stuart Rossman, National Consumer Law Center, Boston, Mass., on the brief), for Plaintiffs–Appellees.

Before: NEWMAN, SOTOMAYOR, and WESLEY, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal concerns the availability of subject matter jurisdiction for permissive counterclaims. It also demonstrates the normal utility of early decision of a motion for class certification. Defendant–Appellant Ford Motor Credit Company ("Ford Credit") appeals from the June 14, 2002, judgment of the United States District Court for the Southern District of New York (Lawrence M. McKenna, District Judge) dismissing for lack of jurisdiction its permissive counterclaims against three of the four Plaintiffs–Appellees and its conditional counterclaims against members of the putative class that the Plaintiffs–Appellees seek to certify. *Jones v. Ford Motor Credit Co.*, No. 00–CV–8330, 2002 WL 1334812 (S.D.N.Y. June 17, 2002). We conclude that supplemental jurisdiction authorized by 28 U.S.C. § 1367 may be available for the permissive counterclaims, but that the District Court's discretion under subsection 1367(c) should not be exercised in this case until a ruling on the Plaintiffs' motion for class certification. We therefore vacate and remand.

### Background

Plaintiffs–Appellees Joyce Jones, Martha L. Edwards, Lou Cooper, and Vincent E. Jackson ("Plaintiffs"), individually and as class representatives, sued Ford Credit alleging racial discrimination under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.* (2003). They had purchased Ford vehicles under Ford Credit's financing plan. They alleged that the financing plan discriminated against African–Americans. Although the financing rate was primarily based on objective criteria, Ford Credit permitted its dealers to mark up the rate, using subjective criteria to assess non-risk charges. The Plaintiffs alleged that the mark-up policy penalized African–American customers with higher rates than those imposed on similarly situated Caucasian customers.

In its Answer, Ford Credit denied the charges of racial discrimination and also asserted state-law counterclaims against Jones, Edwards, and Cooper for the amounts of their unpaid car loans. Ford Credit alleged that Jones was in default on

her obligations under her contract for the purchase of a 1995 Ford Windstar, and that Edwards and Cooper were in default on payments for their joint purchase of a 1995 Mercury Cougar. Additionally, in the event that a class was certified, Ford Credit asserted conditional counterclaims against any member of that class who was in default on a car loan from Ford Credit. The Plaintiffs moved to dismiss Ford Credit's counterclaims for lack of subject matter jurisdiction, Fed.R.Civ.P. 12(b)(1), lack of personal jurisdiction, Fed.R.Civ.P. 12(b)(2), improper venue, Fed.R.Civ.P. 12(b)(3), and failure to state a claim upon which relief could be granted, Fed.R.Civ.P. 12(b)(6).

The District Court granted the Plaintiffs' motion and dismissed Ford Credit's counterclaims, summarizing its reasons for doing so as follows: "[D]efendant's counterclaims do not meet the standard for compulsory counterclaims[, and] ... pursuant to § 1367(c)(4), ... there are compelling reasons to decline to exercise jurisdiction over the counterclaims." *Jones*, 2002 WL 1334812, at *3.

In reaching these conclusions, Judge McKenna acknowledged some uncertainty. After determining that the counterclaims were permissive, he expressed doubt as to the jurisdictional consequence of that determination. On the one hand, he believed, as the Plaintiffs maintain, that permissive counterclaims must be dismissed if they lack an independent basis of federal jurisdiction. On the other hand, he acknowledged, citing *Solow v. Jenkins*, No. 98–CV–8726, 2000 WL 489667, at *2 (S.D.N.Y. Apr.25, 2000), that "there [was] some authority to suggest that ... the court should determine, based on the particular circumstances of the case, whether it ha[d] authority to exercise supplemental jurisdiction under § 1367(a)" over a counterclaim, regardless of whether it was compulsory or permissive. *Jones*, 2002 WL 1334812, at *2.

To resolve his uncertainty, Judge McKenna initially ruled that the counterclaims, being permissive, "must be dismissed for lack of an independent basis of federal jurisdiction." *Id.* He then ruled that, if he was wrong and if supplemental jurisdiction under section 1367 was available, he would still dismiss the counterclaims in the exercise of the discretion subsection 1367(c) gives district courts. *Id.* Without explicitly stating on which of the four subdivisions of subsection 1367(c) he relied, Judge McKenna gave the following reasons for declining to exercise supplemental jurisdiction:

> [1] The claims and counterclaims arise out of the same occurrence only in the loosest terms. . . . There does not exist a logical relationship between the essential facts [to be proven] in the claim and those of the counterclaims.

> [2] [A]llowing defendant's counterclaims to proceed in this forum might undermine the ECOA enforcement scheme by discouraging plaintiffs from bringing ECOA claims due to the fear of counterclaims.

> [3] [T]he interests of judicial economy will not be served by joining the claim and counterclaims in one suit [because of] what would most likely be a tremendous number of separate collection actions, each based on facts specific to the individual plaintiffs involved.

*Id.* at *2–*3. Judge McKenna stated his belief that it would be "unfair and inexpedient" to require absent class members who resided outside of New York to litigate their debt collection actions in the Southern District of New York and that there was no good reason to litigate the debt collection actions in a federal court. *Id.* at *3.

On March 27, 2003, the District Court entered judgment pursuant to Fed. R.Civ.P. 54(b) in favor of the Plaintiffs, dismissing Ford Credit's counterclaims without prejudice. Ford Credit appeals from this decision.

## Discussion

### I. Are Ford Credit's Counterclaims Permissive?

■ Fed.R.Civ.P. 13(a) defines a compulsory counterclaim as

> any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot obtain jurisdiction.

Such counterclaims are compulsory in the sense that if they are not raised, they are forfeited. *See Critical–Vac Filtration Corp. v. Minuteman International, Inc.,* 233 F.3d 697, 699 (2d Cir.2000). Fed. R.Civ.P. 13(b) defines a permissive counterclaim as "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."

■ Whether a counterclaim is compulsory or permissive turns on whether the counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim," and this Circuit has long considered this standard met when there is a "logical relationship" between the counterclaim and the main claim. *See United States v. Aquavella,* 615 F.2d 12, 22 (2d Cir.1979).[1] Although the "logical relationship" test does not require "an absolute identity of factual backgrounds," *id.* (internal citation omitted), the " 'essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.' " *Critical–Vac,* 233 F.3d at 699 (emphasis omitted) (quoting *Adam v. Jacobs,* 950 F.2d 89, 92 (2d Cir.1991)); *see also Harris v. Steinem,* 571 F.2d 119, 123 (2d Cir.1978); *United Artists Corp. v. Masterpiece Productions, Inc.,* 221 F.2d 213, 216 (2d Cir.1955).

We agree with the District Court that the debt collection counterclaims were permissive rather than compulsory. The Plaintiffs' ECOA claim centers on Ford Credit's mark-up policy, based on subjective factors, which allegedly resulted in higher finance charges on their purchase contracts than on those of similarly situated White customers. Ford Credit's debt collection counterclaims are related to those purchase contracts, but not to any particular clause or rate. Rather, the debt collection counterclaims concern the individual Plaintiffs' non-payment after the contract price was set. Thus, the relationship between the counterclaims and the ECOA claim is "logical" only in the sense that the sale, allegedly on discriminatory credit terms, was the "but for" cause of the non-payment. That is not the sort of

---

1. The phrase "logical relationship," in the context of counterclaims, was first used by the Supreme Court in *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 70 L.Ed. 750 (1926). Referring to a counterclaim "arising out of the transaction which is the subject matter of the suit," as stated in former Equity Rule 30, the Court explained:

> "Transaction" is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship.

*Id.*

relationship contemplated by our case law on compulsory counterclaims. The essential facts for proving the counterclaims and the ECOA claim are not so closely related that resolving both sets of issues in one lawsuit would yield judicial efficiency. Indeed, Ford Credit does not even challenge the ruling that its counterclaims are permissive.

## II. Is There Jurisdiction over the Permissive Counterclaims?

For several decades federal courts have asserted that permissive counterclaims require an independent basis of jurisdiction, *i.e.,* that the counterclaim must be maintainable in a federal district court on some jurisdictional basis that would have sufficed had it been brought in a separate action. The origin of this proposition, the questioning of it before the statutory authorization of supplemental jurisdiction in section 1367, and the impact of that provision upon the proposition all merit careful consideration.

(A) *Origin of the independent basis doctrine.* The first suggestion of the requirement of an independent basis for permissive counterclaims is believed to have appeared in *Marconi Wireless Telegraph Co. of America v. National Electric Signaling Co.,* 206 F. 295 (E.D.N.Y.1913), a case involving former Equity Rule 30. *See* Thomas F. Green, Jr., *Federal Jurisdiction over Counterclaims,* 48 Nw. U.L.Rev. 271, 283 (1953). That rule distinguished in its two parts between what we would now call compulsory counterclaims "arising out of the transaction which is the subject matter of the suit" and what we would now call permissive counterclaims "which might be the subject of an independent suit in equity." Equity Rule 30, *quoted in Moore v. New York Cotton Exchange,* 270 U.S. 593, 609, 46 S.Ct. 367, 70 L.Ed. 750 (1926). In *Moore,*

the Supreme Court ruled that the counterclaim in that case bore a sufficient relation to the underlying transaction under the first part of the equity rule to be properly within federal jurisdiction and explicitly declined to "consider the point that, under the second branch [of the rule], federal jurisdiction independent of the original bill must appear." *Id.*

By 1944, our Court somewhat tentatively observed that "[i]t seems to be accepted that a permissive counterclaim . . . is not ancillary and requires independent grounds of jurisdiction." *Lesnik v. Public Industrials Corp.,* 144 F.2d 968, 976 n. 10 (2d Cir.1944) (citations omitted). We stated the proposition more forcefully two years later in *Libbey–Owens–Ford Glass Co. v. Sylvania Industrial Corp.,* 154 F.2d 814, 816 (2d Cir.1946), although our statement, like most of the language in the early cases concerning the proposition, was dictum.

Our first holding that independent jurisdiction is required for a permissive counterclaim occurred in 1968. *See O'Connell v. Erie Lackawanna R.R.,* 391 F.2d 156, 163 (2d Cir.1968). Six years later, the Supreme Court stated, "*If* a counterclaim is compulsory, the federal court will have ancillary jurisdiction over it even though ordinarily it would be a matter for a state court," *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974) (emphasis added), apparently implying that ancillary jurisdiction is not available for a permissive counterclaim.

Notably absent from this evolution of the case law is a reasoned explanation of why independent jurisdiction should be needed for permissive counterclaims. One early decision hinted at a reason by suggesting that the then restrictive rules concerning joinder of claims were applicable whether the claims were sought to be add-

ed by a plaintiff or a defendant. *See Electric Boat Co. v. Lake Torpedo Boat Co.,* 215 F. 377, 381 (D.N.J.1914). Likely also influencing the emergence of the doctrine was concern that, because under Rule 13 all counterclaims that are not compulsory are permissive, requiring independent jurisdiction was necessary to prevent federal court adjudication of every conceivable non-compulsory counterclaim that a defendant might happen to have against a plaintiff, some of which might be totally inappropriate for federal jurisdiction. A wife's federal law suit against her husband for a declaration of rights as a joint author, for example, ought not to be vehicle for his counterclaim seeking a divorce. Perhaps lurking beneath the surface of the casual statements about an independent jurisdiction requirement was apprehension that some counterclaims lacking such a basis would extend the lawsuit beyond Article III's limiting scope of "cases and controversies."

(B) *Questioning the doctrine prior to section 1367.* The first challenge to the independent jurisdiction requirement appeared in Professor Green's article in 1953. *See* Thomas F. Green, Jr., *Federal Jurisdiction over Counterclaims,* 48 Nw. U.L.Rev. 271, 283 (1953). He mounted a powerful argument against the doctrine, demonstrating how it emerged from unreasoned dicta into unexplained holdings and why it was an unwarranted deviation from the general principle that "[t]wo court actions should not be encouraged where one will do." *Id.* at 271 (footnote

omitted). He particularly noted the incursion on the doctrine, well established even in 1953 when he wrote, that permitted some set-offs to be interposed against a plaintiff's claim in the absence of independent jurisdiction. Professor Green questioned why a defendant who can present evidence of a set-off that reduces a plaintiff's judgment to zero should not be able to obtain a counterclaim judgment to which his evidence would entitle him in a separate action. *Id.* at 287–88.

In 1970, Judge Friendly, the acknowledged jurisdictional scholar of our Court, changed his mind about the independent jurisdiction doctrine and "reject[ed] the conventional learning, which [he] followed too readily in *O'Connell." United States v. Heyward–Robinson Co.,* 430 F.2d 1077, 1088 (2d Cir.1970) (Friendly, J., concurring).[2] Judge Friendly noted Professor Green's persuasiveness: "The reasons why the conventional view is wrong are set out in detail in [Professor Green's article], and nothing would be gained by repetition." *Id.*

In 1984, the Third Circuit, in a thoughtful opinion by Judge Becker, rejected the view that independent jurisdiction is required for all permissive counterclaims. *See Ambromovage v. United Mine Workers,* 726 F.2d 972 (3d Cir.1984). Considering whether jurisdiction was available for a set-off, Judge Becker declined to uphold jurisdiction based on the previously recognized set-off exception to the independent jurisdiction requirement,[3] and instead ar-

---

**2.** Judge Friendly refrained from calling for in banc consideration after his change of position because, in agreement with his ultimate vote, his two colleagues had affirmed the judgment upholding federal jurisdiction on the ground, which he did not share, that the counterclaim was compulsory. *See Heyward–Robinson,* 430 F.2d at 1089.

**3.** The set-off exception provides that "[w]here the permissive counterclaim is in the nature of a set-off interposed merely to defeat or reduce the opposing party's claim and does not seek affirmative relief, no independent jurisdictional grounds are required." *Heyward–Robinson,* 430 F.2d at 1081 n. 1. As the court noted in *Ambromovage,* the "defensive set-off exception does not fit squarely within the analytic framework set forth" in *United*

gued broadly for ancillary jurisdiction, with some exceptions,[4] over set-offs and permissive counterclaims that satisfy the test of sharing a "common nucleus of operative fact," *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), with the plaintiff's underlying claim. *Ambromovage*, 726 F.2d at 988–89. "We conclude that the determination that a counterclaim is permissive within the meaning of Rule 13 is not dispositive of the constitutional question whether there is federal jurisdiction over the counterclaim." *Id.* at 990.

(C) *The impact of section 1367.* The judge-made doctrine of ancillary jurisdiction, which had been invoked to provide a jurisdictional basis for compulsory counterclaims, was given statutory undergirding when Congress added section 1367 to

Title 28 in 1990. *See* Judicial Improvements Act of 1990, Pub.L. No. 101–650, Title III, § 310(c), 104 Stat. 5114 (1990). The newly labeled "supplemental" jurisdiction explicitly extended federal courts' authority to "all other claims" in a civil action "so related to claims in the action within [the district court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (2000).

The explicit extension to the limit of Article III of a federal court's jurisdiction over "all other claims" sought to be litigated with an underlying claim within federal jurisdiction recast the jurisdictional basis of permissive counterclaims into constitutional terms.[5] After section 1367, it is no

*Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), because "under the exception, all defensive set-offs, whether or not they satisfy the *Gibbs* test, are within the ancillary jurisdiction of the court." *Ambromovage*, 726 F.2d at 990–92 & n. 56.

**4.** Anticipating considerations that would later be codified in 28 U.S.C. § 1367, Judge Becker suggested that a district court should decline to exercise ancillary jurisdiction over a defendant's claims where the exercise of jurisdiction would violate some federal policy limiting jurisdiction and be an inappropriate exercise of a district court's discretion, taking into account such factors as "fairness to the litigants, judicial economy, and the interests of federalism." *Ambromovage*, 726 F.2d at 991.

**5.** There is some doubt as to whether section 1367's expansion of supplemental jurisdiction to its constitutional limits renders the provision's scope broader than was contemplated in *Gibbs*. The text of subsection 1367(a) unambiguously extends jurisdiction to the limits of Article III, and the provision's legislative history indicates that Congress viewed the *Gibbs* "common nucleus" test as delineating those constitutional limits. *See* H.R.Rep. No. 101–734, *reprinted in* 1990 U.S.C.C.A.N. 6360, 6374–75 (stating that "subsection (a) codifies

the scope of supplemental jurisdiction first articulated by the Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)"). Several commentators have suggested, however, that the extent of constitutional jurisdiction is broader than the *Gibbs* test, as Article III may not require a particular factual relationship between joined claims or counterclaims and federal claims that provide the basis for jurisdiction.

In 1983, Professor Matasar, anticipating section 1367's authorization of supplemental jurisdiction for all claims within an Article III "case or controversy," advocated permitting joinder of all claims, whether those of the plaintiff or the defendant, to the full extent of "the system of rules lawfully adopted to govern procedure in the federal courts." *See* Richard A. Matasar, *Rediscovering "One Constitutional Case": Procedural Rules and the Rejection of the Gibbs Test for Supplemental Jurisdiction*, 71 Cal. L.Rev. 1399, 1478–79. (1983). He drew support from Chief Justice Marshall's statement that " '[the judicial] power is capable of acting only when the subject is submitted to [the judicial department], by a party who asserts his rights in the form prescribed by law.' " *Id.* at 1479 (quoting *Osborn v. Bank of the United States*, 22 U.S. (9 Wheat.) 738, 819, 6 L.Ed. 204 (1824) (Little, Brown 1864)). Professor Matasar

longer sufficient for courts to assert, without any reason other than dicta or even holdings from the era of judge-created ancillary jurisdiction, that permissive counterclaims require independent jurisdiction. Rising to the challenge, after enactment of section 1367, in a case strikingly similar to our pending case, the Seventh Circuit vacated the dismissal of a permissive counterclaim and remanded for exercise of the discretion contemplated by section 1367. *Channell v. Citicorp National Services, Inc.*, 89 F.3d 379 (7th Cir.1996). *Channell* involved a creditor's counterclaims to collect debts in a class action alleging violations of the Consumer Leasing Act, 15 U.S.C. §§ 1667–1667e (2000). As Judge Easterbrook stated, "Now that Congress has codified the supplemental jurisdiction in § 1367(a), courts should use the language of the statute to define the extent of their powers." *Id.* at 385. He viewed section 1367's reach to the constitutional limits of Article III as requiring only "[a] loose factual connection between the claims," *id.* (internal quotation marks omitted), a standard that appears to be broader than the *Gibbs* test of "a common nucleus of operative facts," appropriate for permitting joinder of a plaintiff's non-fed-

eral claim. In *Channell*, he readily found the requisite "loose connection" to exist between the Consumer Leasing Act claim and the debt collection counterclaim. *Id.* at 385–86.

We share the view that section 1367 has displaced, rather than codified, whatever validity inhered in the earlier view that a permissive counterclaim requires independent jurisdiction (in the sense of federal question or diversity jurisdiction). The issue in this case therefore becomes whether supplemental jurisdiction is available for Ford Credit's counterclaims.

### III. Application of Section 1367's Standards for Supplemental Jurisdiction

■ Whether or not the *Gibbs* "common nucleus" standard provides the outer limit of an Article III "case," [6] and is therefore a requirement for entertaining a permissive counterclaim that otherwise lacks a jurisdictional basis, the facts of Ford Credit's counterclaims and those of the Plaintiffs' ECOA claims satisfy that standard, even though the relationship is not such as would make the counterclaims compulsory. *See Channell*, 89 F.3d at 385–86.[7] The

would permit jurisdiction over any counterclaim authorized by federal rules, without requiring any factual relationship to the underlying claim.

More recently, Professor Fletcher (now Judge Fletcher) also advocated a broad view of the claims that could be joined in a "case or controversy" under section 1367. *See* William A. Fletcher, *"Common Nucleus of Operative Fact" and Defensive Set–Off Beyond the Gibbs Test*, 74 Ind. L.J. 171 (1998). Like Professor Matasar, Professor Fletcher urged that the constitutional test of a "case" did not require a factual connection between joined claims, but would be satisfied under either the joinder standards applicable when the Constitution was adopted or modern joinder rules. *Id.* at 178.

Congress's understanding of the extent of Article III is of course not binding as consti-

tutional interpretation, and section 1367's legislative history cannot be read as an independent limit on subsection 1367(a)'s clear extension of jurisdiction to the limits of Article III. Thus, the correct reading of subsection 1367(a)'s reference to "the same case or controversy under Article III" remains unsettled.

6. If the *Gibbs* standard marks the outer limit of an Article III "case," congressional authorization to join counterclaims with a more tenuous connection to the underlying claim would be unconstitutional unless Congress has some authority to expand the constitutional scope of "case."

7. We note that the "common nucleus" test of *Gibbs*, expanding the prior test of *Hurn v. Oursler*, 289 U.S. 238, 245–47, 53 S.Ct. 586,

counterclaims and the underlying claim bear a sufficient factual relationship (if one is necessary) to constitute the same "case" within the meaning of Article III and hence of section 1367. Both the ECOA claim and the debt collection claims originate from the Plaintiffs' decisions to purchase Ford cars.

Satisfying the constitutional "case" standard of subsection 1367(a), however, does not end the inquiry a district court is obliged to make with respect to permissive counterclaims. A trial court must consider whether any of the four grounds set out in subsection 1367(c) are present to an extent that would warrant the exercise of discretion to decline assertion of supplemental jurisdiction.[8] Subsection 1367(c) provides:

> The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

We have indicated that, where at least one of the subsection 1367(c) factors is

applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs,* 383 U.S. at 726, 86 S.Ct. 1130: economy, convenience, fairness, and comity. *See Itar–Tass Russian News Agency v. Russian Kurier, Inc.,* 140 F.3d 442, 445–47 (2d Cir.1998) (rejecting approach of 1st, 3rd, 7th, and D.C. Circuits in favor of approach adhered to by 8th, 9th, and 11th Circuits).

Clearly the exception set forth in subsection 1367(c)(1) does not apply since Ford Credit's counterclaims do not raise a novel or complex issue of state law, but merely a standard contract question. Nor does subsection 1367(c)(3) apply since the District Court has not dismissed all claims over which it has original jurisdiction. That leaves subsections 1367(c)(2), permitting declination of supplemental jurisdiction where "the [counter]claim substantially predominates over the claim or claims over which the district court has original jurisdiction," and 1367(c)(4), permitting declination "in exceptional circumstances, [where] there are other compelling reasons for declining jurisdiction." The District Court apparently based its decision on subsection 1367(c)(4), since it cited only that subsection in its opinion, but some of the concerns it discussed implicate the substantial predomination analysis of subsection 1367(c)(2) as well.

---

77 L.Ed. 1148 (1933), was developed to provide some limit upon the state law claims that a *plaintiff* could join with its federal law claims. That rationale does not necessarily apply to a defendant's counterclaims. A plaintiff might be tempted to file an insubstantial federal law claim as an excuse to tie to it one or more state law claims that do not belong in a federal court. There is no corresponding risk that a defendant will decline to file in state court an available state law claim,

hoping to be lucky enough to be sued by his adversary on a federal claim so that he can assert a state law counterclaim.

8. Subsection 1367(b), precluding exercise of supplemental jurisdiction under some circumstances where jurisdiction over the underlying claim is based solely on diversity of citizenship, does not apply here; the Plaintiffs' underlying claim is based on federal question jurisdiction.

In *Channell,* Judge Easterbrook canvassed the competing considerations bearing on whether the subsection (c)(2) and (c)(4) factors might permit declination of supplemental jurisdiction over collection counterclaims interposed against a claim under a consumer protection statute. *See Channell,* 89 F.3d at 386–87. Acknowledging a district court's discretion, the Seventh Circuit ultimately remanded because "[a]rguments under § 1367(c) are addressed to the district court's discretion." *Id.* at 387. In *Channell,* however, the class had been certified, class members had been notified, and some had opted out. *Id.* at 384. In our case, a ruling on the class motion has not yet been made.

■ Whether Ford Credit's counterclaims "predominate[ ]" over the Plaintiffs' claims and whether there are "exceptional circumstances" for declining jurisdiction cannot properly be determined until a decision has been made on the Plaintiffs' motion for class certification. Both the applicability of subsections 1367(c)(2) and (4), and the exercise of a district court's discretion in the event either or both are ruled applicable will be significantly influenced by the existence of a large class as sought by the Plaintiffs. The District Court's conclusions that it would be "unfair and inexpedient" to require out-of-state class members to litigate Ford's state law debt claims in New York, and that

allowing the counterclaims might dissuade potential plaintiffs from joining the class, were therefore premature.[9]

Class certification is to be decided "at an early practicable time" after the commencement of a suit. Fed.R.Civ.P. 23(c)(1) (amended Dec. 1, 2003). *See* 5 James Wm. Moore et al., Moore's Federal Practice–Civil § 23.61 (3d ed.2003); *cf. Cottone v. Blum,* 571 F.Supp. 437, 440–41 (W.D.N.Y.1983) (dismissing class action for, among other things, failure to move for class certification within 60 days of filing of complaint, as required by local rule). That course is especially important in this case. Accordingly, we remand this case with directions to rule on the class certification motion, and then, in light of that ruling, to proceed to determine whether to exercise or decline supplemental jurisdiction.

On remand, the District Court should exercise its discretion pursuant to subsection 1367(c) in light of our decision in *Itar–Tass,* particularly the caution there expressed concerning use of subsection 1367(c)(4), 140 F.3d at 448. In order to decline jurisdiction on this basis, the District Court should identify truly compelling circumstances that militate against exercising jurisdiction. *Id.* Moreover, if the Court certifies the class action, its substantial predomination analysis under subsection 1367(c)(2) should take into account the

9. The District Court's assumption that plaintiffs' class would be certified, and its analysis of the state law counterclaims in light of that assumption, unduly weighted the subsection 1367(c) analysis in favor of the plaintiffs. *Gibbs* emphasizes that the question of "whether [supplemental] jurisdiction has been properly assumed is one which remains open throughout the litigation," and the analysis should be undertaken when the district court is best positioned to determine how the exercise of jurisdiction will affect the case as a whole. *Gibbs,* 383 U.S. at 727, 86 S.Ct.

1130. Thus, when pendent state law claims are asserted in the context of a putative class action, district courts should normally not dismiss the claims based solely on the problems that could arise if the class is eventually certified. *See, e.g., Clark v. McDonald's Corp.,* 213 F.R.D. 198, 232 (D.N.J.2003) (noting that "[a]lthough the potential remains for this litigation to reach a crossroads where the better course may be to decline supplemental jurisdiction over claims arising under the laws of the Subclass States, or some of them," there was no reason to dismiss the claims prior to certification).

methods by which the class action might be managed in order to prevent the state law counterclaims from predominating. By bifurcating the litigation, certifying a limited class (perhaps only in-state plaintiffs), or utilizing other management tools, the District Court might be able to structure the litigation in such a way as to prevent the state law claims from predominating over the federal basis of the action, while maintaining the advantages inherent in providing a forum in which all of the litigants' claims can be litigated.

## Conclusion

The judgment dismissing Ford Credit's counterclaims is vacated, and the case is remanded for further proceedings consistent with this opinion. No costs.