**KRISTENSONS–PETROLEUM,
INC., Plaintiff,**

v.

**SEALOCK TANKER CO.,
LTD., Defendant,**

and

**Blanc Navigation, Intervenor–
Defendant.**

No. 02 Civ. 9222(DC).

United States District Court,
S.D. New York.

Feb. 23, 2004.

Betancourt, Van Hemmen, Greco & Kenyon by Jeanne–Marie Downey, Esq., New York City, for Plaintiff.

Tisdale & Lennon, LLC by Patrick F. Lennon, Esq., New York City, for Intervenor–Defendant Blanc Navigation.

### MEMORANDUM DECISION

CHIN, District Judge.

In this admiralty action, intervenor-defendant Blanc Navigation ("Blanc") counterclaims for a declaratory judgment that plaintiff Kristensons–Petroleum, Inc. ("KPI") does not possess a maritime lien against a vessel owned by Blanc and had no right to arrest the vessel for the alleged failure of the vessel's operator, defendant Sealock Tanker Co., Ltd. ("Sealock"), to pay KPI for fuel purchases. KPI moves to dismiss Blanc's counterclaim and to strike Blanc's answer to the underlying complaint. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

### I. The Facts

KPI is a corporation engaged in the business of selling, trading, and brokering marine bunkers and lube oil to vessels worldwide. (Compl.¶ 2). Defendant Sealock Tanker Co., Ltd. ("Sealock") is the charterer for the M/T Blanc. (Atkinson Certif. ¶ 3). Blanc is the owner of the vessel M/T Blanc. (CC ¶ 4).[1] From August to October 1998, Sealock and KPI entered into three separate contracts for sale of marine fuel oil for the M/T Blanc. (Compl.¶¶ 7–10). Sealock failed to pay KPI for the bunkers supplied pursuant to the contracts. (Id. ¶¶ 8, 10).

Article 11 of KPI's "Standard Terms and Conditions," incorporated into the fuel supply contracts states: "This agreement shall be governed and construed in all particulars by the laws of the State of New York, United States of America (without reference to any conflict of law rules)." (Zannos Decl., Exh. 2).

In November 2002, KPI obtained an order from a Belgian court authorizing the arrest of the M/T Blanc in Belgium, based on the alleged breach of the fuel supply contracts. (CC ¶ 4). Blanc issued a bank guarantee for 425,057.00 Euros to obtain

---

1. Blanc filed one document containing its "Answer" and "Counter–Claim for Declaratory Relief" with each part separately numbered. References to "CC" are to the counterclaim portion of the pleading. References to "Ans." are to the answer portion.

the release of the vessel. (*Id.* ¶ 5). The bank guarantee secures KPI in the event, *inter alia,* of a final decision of a competent court regarding KPI's claims against Blanc or Sealock. (*Id.;* Atkinson Certif. ¶ 5, Exh. A). KPI asserted as the basis for the arrest its right to a maritime lien and concomitant *in rem* right to proceed against the vessel under the United States general maritime law. (*Id.* ¶ 6).

Blanc instituted legal proceedings in Belgium challenging the legality of the vessel's arrest. (Atkinson Certif. ¶ 6). On April 22, 2003, a Belgian court denied Blanc's claim. (*Id.* ¶ 8). Blanc's appeal of the judgment is currently pending. (*Id.*).

## II. *Procedural History*

KPI filed this action on November 19, 2002 for breach of contract. By Order dated April 7, 2003, this Court granted Blanc's motion to intervene. I ordered the Clerk of the Court to enter the default of Sealock by Order dated May 5, 2003. By the same Order, however, I denied KPI's motion for a default judgment against Sealock without prejudice to renewal after completion of the proceedings against Blanc.

Blanc answered the complaint and counterclaimed for declaratory relief on May 8, 2003. Blanc seeks a declaration that under the marine fuel supply contracts at issue in the underlying complaint, governed by New York state law, KPI does not possess a maritime lien and therefore had no right to proceed *in rem* against the M/T Blanc by arrest in Belgium. (CC ¶ 11).

## DISCUSSION

KPI moves to dismiss Blanc's counterclaim and to strike Blanc's answer and affirmative defenses.[2]

### A. *The Counterclaim*

KPI moves to dismiss the counterclaim on the grounds that subject matter jurisdiction is lacking because the counterclaim does not pose an "actual case and controversy," and *in rem* jurisdiction over the M/T Blanc does not exist. In making this argument, KPI ignores the issue of supplemental jurisdiction. I address (1) supplemental jurisdiction, (2) the "case and controversy" requirement, and (3) jurisdiction over the M/T Blanc.

### 1. *Supplemental Jurisdiction*

As a threshold matter, this Court has subject matter jurisdiction over the underlying action. The federal district courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333. If a contract is a "maritime contract," it is within a federal court's admiralty jurisdiction. *CTI–Container Leasing Corp. v. Oceanic Operations Corp.,* 682 F.2d 377, 379 (2d Cir.1982). A contract for supply of marine fuel is "maritime" in nature. *Exxon Corp. v. Central Gulf Lines, Inc.,* 500 U.S. 603, 612, 111 S.Ct. 2071, 114 L.Ed.2d 649 (1991). The contracts KPI alleges were breached are clearly maritime contracts, as they were for the supply of marine fuel. Accordingly, this Court has subject matter jurisdiction over the underlying action.

**2.** KPI purportedly moves to "dismiss" the "Answer with Counterclaim." In essence, however, this is a two-part motion: KPI moves to dismiss the counterclaim and to strike the answer and affirmative defenses. Although KPI purports to move to "dismiss" the "Answer with Counterclaim" pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), only Fed. R.Civ.P. 12(b)(1) applies to the motion to dis-

miss the counterclaim. KPI fails to address any "failure to state a claim," pursuant to Fed.R.Civ.P. 12(b)(6). On the other hand, KPI's motion to strike the answer and affirmative defenses is more appropriately construed as a motion pursuant to Fed.R.Civ.P. 12(f) or as a motion for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c).

Whether this Court has subject matter jurisdiction over Blanc's counterclaim involves the interplay between Fed.R.Civ.P. 13, which addresses counterclaims, and 28 U.S.C. § 1367(a), the supplemental jurisdiction statute. *See Solow v. Jenkins,* No. 98 Civ. 8726(RPP), 2000 WL 489667, at *1 (S.D.N.Y. April 25, 2000). Section 1367(a) states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). Fed.R.Civ.P. 13(a) defines a compulsory counterclaim as:

> any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction.

Fed.R.Civ.P. 13(b) defines as a permissive counterclaim "any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Although supplemental jurisdiction could exist in either instance, *see Jones v. Ford Motor Credit Co.,* 358 F.3d 205, 210–13 (2d Cir. 2004), supplemental jurisdiction would certainly exist over a compulsory counterclaim. *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974).

Whether a counterclaim is "compulsory" or "permissive" turns on whether the counterclaim " 'arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.' " *Jones,* at 2009 (quoting *United States v. Aquavella,* 615 F.2d 12, 22 (2d Cir.1979)). Generally, this standard is met "when there is a 'logical relationship' between the counterclaim and the main claim.' " *Jones,* at 2009. "Although the 'logical relationship' test does not require 'an absolute identity of factual backgrounds,' ... the 'essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.' " *Id.* (internal citations omitted).

The close logical relationship between Blanc's counterclaim and the underlying complaint renders the counterclaim a compulsory one. Both KPI's breach of contract claim and Blanc's declaratory judgment counterclaim revolve around Sealock's failure to make payment on the marine fuel supply contracts with KPI. The alleged breach of contract was the basis for the arrest of Blanc's vessel. Although an absolute identity of factual backgrounds is not required, such an absolute identity exists in this case. Moreover, even assuming there was no absolute identity of factual backgrounds, there is sufficient connection that the Court would choose, in its discretion, to exercise supplemental jurisdiction over the counterclaim. Accordingly, supplemental jurisdiction exists over Blanc's counterclaim.

### 2. *The "Case and Controversy" Requirement*

KPI contends that Blanc's counterclaims fails to meet Article III's "actual case and controversy" requirement. KPI maintains that the counterclaim does not raise a "real and immediate controversy admitting of specific relief" because the declaratory

relief sought would fail to resolve Blanc's liability to KPI under the bank guarantee.

 The Declaratory Judgment Act "permits declaratory relief only in cases presenting 'actual controvers[ies],' ... a requirement that incorporates into the statute the case or controversy limitation on federal jurisdiction found in Article III of the Constitution." *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians,* 94 F.3d 747, 752 (2d Cir.1996). "For a court to have subject matter jurisdiction over a declaratory judgment action, there must be 'a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.* (citation and parentheses in original omitted). An actual case or controversy is one that is "real and substantial ... admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *F.X. Maltz, Ltd. v. Morgenthau,* 556 F.2d 123, 125 (2d Cir.1977) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)).

 There is "no bright line rule for determining 'whether the dispute presents a substantial controversy or merely an abstract question'.... Instead, courts must decide whether a justiciable controversy exists 'on a case by case basis'." *American Pioneer Tours, Inc. v. Suntrek Tours, Ltd.,* No. 97 Civ. 6220(DLC), 1998 WL 60944, at *2 (S.D.N.Y. Feb. 13, 1998) (citing *Kidder, Peabody & Co. v. Maxus Energy Corp.,* 925 F.2d 556, 562 (2d Cir. 1991)).

 KPI's contention that Blanc's counterclaim fails to meet Article III's requirements is not persuasive. KPI argues that because this Court cannot grant relief that would be conclusive or specific enough to resolve the declaratory relief claim, no "case and controversy" exists. The argument is rejected, for the relief sought would certainly settle the legal controversy between KPI and Blanc. It is true that Blanc's liability may result, in part, from the bank guarantee. A declaration as to both the viability of a maritime lien and the M/T Blanc's arrest, however, would necessarily implicate Blanc's liability under the bank guarantee, as Blanc issued the guarantee to secure its vessel's release upon arrest. (CC ¶ 5). A declaratory judgment as to the maritime lien and arrest that precipitated the bank guarantee would address liability pursuant to the guarantee.

### 3. *Jurisdiction over the M/T Blanc*

KPI additionally contends that subject matter jurisdiction over the counterclaim is lacking because the M/T Blanc is not within the jurisdiction of the court.

 KPI incorrectly conflates *in rem* jurisdiction with subject matter jurisdiction. It is well-settled that subject matter jurisdiction and *in rem* jurisdiction are distinct. *See Mattel, Inc. v. Barbie–Club. com,* 310 F.3d 293, 296–97, 298 (2d Cir. 2002); *In re Kassover,* 268 B.R. 698, 703 (S.D.N.Y.2001); *Falise v. American Tobacco Co.,* 241 B.R. 48, 62 (E.D.N.Y.1999); *United States v. All Funds on Deposit of Any Accounts Maintained in the Names of Meza,* 856 F.Supp. 759, 762 (E.D.N.Y. 1994). Accordingly, any purported absence of *in rem* jurisdiction would not vitiate the subject matter jurisdiction that exists in this matter.

 In any event, Blanc's counterclaim does not rely on the existence of *in rem* jurisdiction. An *"in rem"* proceeding is one in which "a vessel or thing is itself treated as the offender and made defendant by name or description in order to enforce a lien." *Madruga v. Superior Court of State of Cal. in and for San Diego County,* 346 U.S. 556, 560, 74 S.Ct.

298, 98 L.Ed. 290 (1954). "[I]n rem jurisdiction in admiralty exists only to enforce a maritime lien." *Rainbow Line, Inc. v. M/V Tequila,* 480 F.2d 1024, 1028 (2d Cir. 1973).

> It is axiomatic that *in rem* jurisdiction exists in an action only where the subject matter of the action, or an appropriate substitute thereof, is within the jurisdiction of the court in which the action lies. Thus, where a vessel is the target of an *in rem* action in admiralty, it must be both within the territorial jurisdiction of the court hearing the cause and subject to the order of the court through process of arrest.

*In re Millenium Seacarriers, Inc.,* 275 B.R. 690, 698 (S.D.N.Y.2002) (quoting *American Bank of Wage Claims v. Registry of the District Court of Guam,* 431 F.2d 1215, 1218 (9th Cir.1970) (internal quotations omitted)). As opposed to actions in which parties seek to enforce maritime liens against vessels, thus requiring *in rem* jurisdiction, Blanc's counterclaim alleges no claim against the M/T Blanc. Rather than seeking enforcement of a lien against its vessel, Blanc seeks a determination that no such lien exists. In essence, Blanc is asserting the opposite of an *in rem* claim: it already owns the vessel and is arguing that KPI's lien on the vessel is invalid. Moreover, as the parties themselves are before the Court, it is irrelevant that the vessel is not in this jurisdiction. Accordingly, the *in rem* jurisdictional requirements are inapplicable.

**B.** *The Answer*

Blanc asserts the following affirmative defenses to the complaint: (1) laches; (2) lack of subject matter jurisdiction; (3) insufficient service of process; and (4) failure to state a claim. (Blanc Ans. 2–3). KPI moves to strike Blanc's answer and affirmative defenses on the grounds that (1) Blanc is not a real party in interest, and therefore, cannot assert rights belonging to Sealock; and (2) the Court has subject matter jurisdiction over KPI's underlying complaint because it alleges claims based on a maritime contract.

For the reasons discussed above, Blanc's affirmative defense based on subject matter jurisdiction is stricken. *See* Discussion (A), *supra.*

■ KPI's argument that Blanc is not entitled to answer the complaint and assert affirmative defenses because it is not a "real party in interest," however, is incorrect. By challenging Blanc's standing to answer and assert affirmative defenses, KPI seeks to relitigate Blanc's right to intervene as a "real party in interest." This Court has already decided this issue. By order dated April 7, 2003, this Court granted Blanc's motion to intervene as a party defendant. As an intervenor-party defendant, Blanc enjoys the status of a party and shares Sealock's rights as a defendant. *Ass'n of Contracting Plumbers of the City of New York, Inc. v. Local Union No. 2 United Ass'n of Journeymen & Apprentices of the Plumbing & Pipefitting Indus.,* 841 F.2d 461, 467 (2d Cir. 1988) ("Once the right to intervene is established, the intervenor's status is equivalent to that of a party."); *In re Oceana Int'l, Inc.,* 49 F.R.D. 329, 333–34 (S.D.N.Y. 1969). Accordingly, Blanc has standing to answer and assert affirmative defenses.

### CONCLUSION

For the reasons set forth above, plaintiff's motion is granted in part and denied in part. Counsel for the parties shall appear for a pretrial conference on March 5, 2004 at 10:30 a.m., in Courtroom 11A of the United States Courthouse at 500 Pearl Street, New York, New York.

SO ORDERED.