**Wayne T. PALMER, Appellant,**

v.

**David J. BARRAM, Administrator, General Services Administration, Appellee.**

**No. 97–1539.**

United States Court of Appeals, Federal Circuit.

Aug. 3, 1999.

---

Wayne T. Palmer, pro se, of Bailey, Colorado.

Katherine M. Kelly, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee. With her on the brief were David W. Ogden, Acting Assistant Attorney General, David M. Cohen, Director, and Kirk Manhardt, Assistant Director.

L. James D'Agostino, Reed Smith Shaw & McClay, LLP, of McLean Virginia, argued for amicus curiae The Federal Circuit Bar Association. With him on the brief were Giovanna M. Cinelli, Andrew J. Hungerman, IV, and Jason P. Matechak. Of counsel on the brief was George E. Hutchinson and Kenneth J. Nunnenkamp, The Federal Circuit Bar Association, of Washington, DC.

Before MICHEL and GAJARSA, Circuit Judges, and CUDAHY,* Senior Circuit Judge.

MICHEL, Circuit Judge.

Wayne T. Palmer appeals from the decision of the General Services Administration Board of Contract Appeals (the "GSBCA"), denying Mr. Palmer's claim, which he elected to pursue under the statutory small claims procedure, for breach of a vehicle sale contract. *See Palmer v. General Servs. Admin.*, No. 14063 (GSBCA May 12, 1997). On appeal to us, following special briefing on jurisdiction and regular briefing, repeatedly deferred, on the merits and appointment of an *amicus curiae* and filing of an *amicus curiae* brief, the appeal was finally submitted for our decision after oral argument on June 8, 1999.[1] The pertinent section of the Con-

---

* Honorable Richard D. Cudahy, Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation.

1. Mr. Palmer waived oral argument but counsel for the *amicus curiae* and for the government argued. We take this occasion to express our appreciation for the assistance provided by the Federal Circuit Bar Association, *amicus curiae*, and its volunteer counsel, Reed Smith Shaw & McClay, LLP. The case was argued for the *amicus curiae* by Mr. L. James D'Agostino.

tract Disputes Act of 1978 (the "CDA"), 41 U.S.C. § 608(d) (1994), bars an appeal from a decision of any board of contract appeals where the claimant has elected the small claims procedure, except in cases of "fraud." We hold that as used in that subsection "fraud" refers to the board proceeding, not the formation of the underlying contract. Because Mr. Palmer has not alleged any such fraud, we must dismiss his appeal for lack of jurisdiction.

## BACKGROUND

### A.

On August 1, 1996, Mr. Palmer attended a vehicle auction held by the General Services Administration (the "GSA") Fleet Management Center in Denver, Colorado. At the auction, Mr. Palmer signed a "bidder registration card" agreeing to a number of special terms and conditions of sales at the auction, set forth in a form described below, as well as general terms and conditions in a general form that was referenced in the special form. Before bidding, Mr. Palmer requested from an auction representative the maintenance record of a 1992 Ford Bronco, but was told that he could not be provided with that document. Despite not being able to view the maintenance record, Mr. Palmer bid on the Bronco for $11,000. His was the highest bid and it was accepted. After placing his winning bid, Mr. Palmer signed a "bid card" similar to the bidder registration card, which stated in capital letters, "Subject to the general sales terms and conditions (Standard Form 114C) and any special terms and conditions applicable to this sale, I, the undersigned, offer and agree to purchase the item designated above at the price indicated above."

During the auction, Mr. Palmer also received the "Special Terms and Conditions of Sale" form (the "Form"). At the top of the Form was printed, "IMPORTANT— Please read before bidding," under which was written, "CONDITION OF PROPERTY IS NOT WARRANTED." The Form continued:

Description Warranty: If a misdescription is determined before removal of the property, the Government will keep the property and refund any money paid. If a misdescription is determined after removal, the Government will refund any money paid if the purchaser takes the property at his/her own expense to a location specified by the Contracting Officer. No refund will be made unless the purchaser submits a written notice to the contracting officer within 15 calendar days of the date of removal that the property is misdescribed and maintains the property in the same condition as when removed.... *This warranty is in place of all other guarantees and warranties, expressed or implied. The Government does not warrant the merchantability of the property or its fitness for any use or purpose. ...*

Deficiencies, when known, have been indicated in the item description. However, *absence of any indicated deficiencies cannot mean the item is without deficiencies.* Bidders are cautioned to inspect before bidding.

(emphasis added).

Mr. Palmer took possession of the vehicle and drove it without difficulty for three months. Then, in November 1996, Mr. Palmer drove the Bronco to Albuquerque, New Mexico. During the trip the Bronco experienced transmission problems. The Bronco was towed to a Ford dealership where Mr. Palmer was informed that the entire transmission needed replacement. The dealership replaced the transmission for $1,955.06, including parts and labor. The Bronco's odometer read 64,715 miles when Mr. Palmer brought the vehicle into the Ford dealership, indicating that he had driven the vehicle 9,505 miles since he purchased it at the auction.

### B.

Mr. Palmer submitted a claim to a GSA contracting officer (the "CO") seeking $1,348.82 plus tax, the cost of the new transmission, exclusive of labor. Mr.

Palmer received a letter, dated December 6, 1996, from the CO, denying his claim. The CO reasoned that under the express terms and conditions of the sale, as stated in both the bid card and the registration card, which Mr. Palmer signed, and further detailed in the Form, the Bronco came with a warranty of description, but no warranty of condition, and thus, no guarantee of the fitness of the Bronco's transmission. Furthermore, Mr. Palmer failed to submit in writing a claim under the description warranty within fifteen days of the sale as required by the express terms of the warranty.

In a letter dated December 10, 1996, Mr. Palmer responded to the denial of his claim, stating that the issue was one of "good faith," not the terms and conditions of a warranty. The CO again denied Mr. Palmer's claim in a letter dated December 24, 1996.

Mr. Palmer appealed the decision to the GSBCA on December 27, 1996. In a letter dated January 22, 1997, he designated his notice of appeal as his complaint and requested that his case proceed pursuant to the statutory small claims procedure. On April 29, 1997, the GSBCA held a conference with the parties and determined that the record was sufficient to decide the case without further submissions or a hearing. Accordingly, the GSBCA closed Mr. Palmer's appeal record.

On May 12, 1997, the GSBCA issued its decision denying Mr. Palmer's claim. On June 5, 1997, Mr. Palmer moved for reconsideration of the decision. The GSBCA denied his motion on July 31, 1997, stating that he had provided no new evidence to support his claim, and reaffirming its May 12 decision.

## C.

Mr. Palmer timely filed an appeal with this court, seeking $1,955.06, representing the cost of both parts and labor for the replacement of the transmission.[2] In his brief, he asserted that the GSBCA failed to consider as evidence of fraud his allegations that the GSA sold the Bronco despite knowing that it had been in several accidents, had a faulty transmission, and had not been maintained properly.

A letter was sent on September 19, 1997 by this court, *sua sponte*, requesting that both parties file submissions addressing why Mr. Palmer's appeal should not be dismissed for lack of jurisdiction, because decisions under the GSBCA's small claims procedure are not appealable to this court "except in cases of fraud." 41 U.S.C. § 608(d).

On March 6, 1998, this court issued an order inviting *amicus curiae* briefs to respond to the jurisdictional issue within thirty days. The Federal Circuit Bar Association made a motion to file an *amicus curiae* brief and requested an extension of time to file its brief. The motion was granted, allowing a thirty day extension. The *amicus curiae* brief was filed on April 30, 1998. On September 24, 1998, this court ordered Mr. Palmer to file a brief within 30 days. After not receiving a brief from Mr. Palmer, on December 1, 1998, this court issued an order for Mr. Palmer to respond to the September 1998 order and file an informal brief within thirty days of the date of filing the order. He timely filed his informal brief on December 11, 1998. The appeal is now being decided, nearly two years after it was filed in this court on September 9, 1997.

---

**2.** Because we are dismissing this appeal for lack of jurisdiction, we do not address the issue of whether Mr. Palmer may claim on appeal the costs of labor, which he did not claim before the CO or the GSBCA. Nor do we address the issue of whether Mr. Palmer may claim on appeal the cost of food and lodging incurred while waiting for the transmission to be repaired and damages for alleged "personal physical injuries or personal physical sickness," which were also not claimed before the CO or the GSBCA. Thus, waiver is not any part of our decision.

## DISCUSSION

■ This court's jurisdiction, if any, over this appeal can only be predicated on our statutory authority over appeals from decisions of contract boards of appeal. *See* 28 U.S.C. § 1295(a)(10) (1994); 41 U.S.C. § 607(g)(1)(A) (1994). We have repeatedly questioned whether we have such jurisdiction as this appeal has progressed. Although the government did not move to dismiss, it is always the duty of the court "to determine its jurisdiction and to satisfy itself that an appeal is properly before it." *Wang Labs., Inc. v. Applied Computer Sciences, Inc.*, 958 F.2d 355, 357 (Fed.Cir. 1992). The question of subject matter jurisdiction, therefore, is one that may be raised *sua sponte* by the court, as it was here, and our jurisdiction to address and decide it is inherent.

■ Whether we have jurisdiction to adjudicate a particular appeal is a question of law. *See King v. Briggs*, 83 F.3d 1384, 1387 (Fed.Cir.1996). We address it on the record before us mindful that the burden of persuasion falls on the appellant to establish that we indeed possess the jurisdiction he seeks to invoke.

### I.

■ On appeal, Mr. Palmer argues that this court has jurisdiction because, under the small claims procedure, appeals to us are allowed "in cases of fraud," and he alleges that the GSA committed "fraud" in inducing him to contract with it by misrepresenting the condition of the vehicle offered for sale. Pursuant to 41 U.S.C. § 608(d), "[a] decision against the Government or the contractor reached under the small claims procedure shall be final and conclusive and shall not be set aside except in cases of fraud." Section 608(d) does not define "fraud," nor do regulations clarify the type of "fraud" that authorizes an appeal of a board decision to this court. No Federal Circuit cases on point have been cited by either of the parties or by the *amicus curiae* and we are aware of none ourselves. Neither is there case law, either in the boards of contract appeals or

the United States Court of Federal Claims, on how the term "fraud" in section 608(d) is to be interpreted. However, our review of the legislative history of the CDA and the use of similar terminology in a related and adjacent provision indicates that the term "fraud" in section 608(d) refers only to fraud in adjudicatory proceedings. Section 608(d) therefore does not permit our review merely because Mr. Palmer's substantive claim is premised upon an allegation of fraud in the underlying sale. As noted, he does not allege any fraud in the GSBCA proceedings.

### A.

■ A small claims procedure was included as part of the CDA to expedite the resolution of minor government contractor disputes. The legislative history of the small claims procedure includes a committee report which indicates that:

> All witnesses agreed with the need for special procedures to handle small claims. Representatives of the national Small Business Association and the Association of General Contractors, the Office of Federal Procurement Policy, the General Accounting Office, and the American Bar Association strongly supported ... the setting up of expedited procedures for handling claims up to $10,000. The District of Columbia bar, the Justice Department, and the agency board representatives all expressed opposition to granting a contractor the right to go to court for a de novo trial upon losing a claim under the expedited procedure while the Government had no recourse on a negative decision.

S. Rep. No 95–1118, at 6 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5234, 5240. Congress ultimately followed these recommendations and legislated a small claims system whereby, in any board appeal in which the amount in controversy is $10,000 or less, the appellant may elect simplified procedures which will lead to a decision within 120 days of the board's receipt of that election. As the Report of the Senate

Committees on Governmental Affairs and the Judiciary explained, the purpose of the small claims procedure was to change the prior system which, it said, is "often too expensive and time consuming for the efficient and cost-effective resolution of small claims and, on the other hand, often fails to provide the procedural safeguards and other elements of due process that should be the right of litigants." *Id.* at 4; 1978 U.S.C.C.A.N. at 5238. · Although simply making a voluntary election to appeal denial of a claim under the small claims procedure might itself save the appellant litigation expenses, the board, in its discretion, can also limit or prohibit discovery, which can save additional costs. Finally, an appeal to us is not permitted "except in cases of fraud." This provision, too, saves time and money.

Interpreting section 608(d) to limit appeals to "fraud in the proceedings," we believe, supports the CDA's goal of establishing an expedited and cost-effective process to resolve small claims. If appeals to us were permitted based upon mere allegations of fraud in the contracting process, then the process for resolving such small claims would become lengthier, slower, more cumbersome, and, consequently, more costly to all parties. This is of no small concern given the frequency with which allegations of government misrepresentation or other such fraud seem to be made by contractors. When the appeal proceedings themselves are fraudulent, however, there has been no meaningful opportunity to litigate the underlying claim, and the decision should be appealable, so that the claim can be fairly heard and decided. Thus, in light of the legislative purpose of the small claims provision of the CDA, we think that it is more reasonable to interpret the term "fraud" in section 608(d) to refer to fraud in the proceedings, not fraud in the inducement of the contract, and that, this is indeed the correct construction.

Moreover, there is no legislative history indicating any congressional intent to single out "fraud in the inducement" in contract cases for a two-level appeals process.

Ascribing such an intent to Congress, in fact, would be illogical given other types of similar abuse or inequities that can occur in the contacting process, such as lack of capacity or authority, duress, illegality, unconscionability or mistake, which admittedly are unappealable once the claimant has elected the small claims procedure. Thus, rather than concluding that Congress singled out a particular form of abuse or inequity in the *contracting process* for additional appeal rights, we think it more reasonable that Congress intended to confer such appeal rights only when an abuse of the *dispute resolution process* before the board was alleged. That is, that board decisions are appealable to us only where fraud in board proceedings, if proven, could have tainted the board decision itself. This interpretation seems particularly reasonable given that an allegation of fraud before a board of contract appeals presumably might be initially raised before this court, whereas the board of contract appeals would already have had the opportunity to rule on the allegation of fraud in the underlying contract.

**B.**

The use of similar terminology in an adjacent and interrelated CDA provision also supports our interpretation. The very next section, 41 U.S.C. § 609(b) (1994), specifically provides, "the decision [of the board] on any question of fact shall be final and conclusive and shall not be set aside unless the decision is fraudulent, or arbitrary, or capricious . . . ." Since section 609 refers to permitting appellate review of board fact findings only if the "decision" is "fraudulent," it is reasonable to conclude that the preceding provision, section 608, enacted on the very same day as part of the same comprehensive statute, similarly used the term "fraud" to refer to board decisions tainted by fraud, rather than contracts induced by fraud. Reading sections 608(d) and 609(b) consistently indicates a legislative intent that "fraud" mean only fraud in the board's decisional pro-

ceedings. Of course, we need not and do not here explore whether the fraud must be on the part of either the board or the adverse party.

Mr. Palmer made no claim that either the GSA in defending this action before the GSBCA, or the GSBCA in deciding the appeal, committed any fraud. Indeed, Mr. Palmer's first mention of fraud was in his motion for reconsideration before the GSBCA, in which he alleged only that the GSA had committed fraud by: (1) placing the vehicle in the auction despite it having been in several accidents; (2) failing to provide a maintenance report and to maintain the vehicle properly; and (3) failing to maintain the Bronco properly before the auction. Such "fraud in the inducement," even if true and timely alleged, is not fraud against the losing party in or by the administrative tribunal, which we think is the sole concern of this statutory section.

## C.

The *amicus curiae* cites to case law to support its argument that fraud has been interpreted broadly in similar circumstances, in which limiting language was not included. The *amicus curiae* first cites to *S & E Contractors, Inc. v. United States*, 406 U.S. 1, 4, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972), in which it maintains "[t]he Supreme Court deprived the Department of Justice the right of appeal in a Wunderlich Act, 41 U.S.C. § 321, contract clause case because of the absence of fraud or bad faith." *Amicus Curiae Br.* at 7. The *amicus curiae* argues that, "Although not referred to expressly as 'substantive fraud' or 'fraud on the merits,' the fact that the defenses tendered by the Government did not raise any issue of fraud or bad faith contributed to the Court's opinion that an appeal was precluded." *S & E Contractors*, 406 U.S. at 7, 92 S.Ct. 1411. We disagree with the *amicus curiae*'s interpretation of *S & E Contractors*, resolving the jurisdictional issue in this case. *S & E Contractors* was not brought under the CDA, nor did it address the small claims procedure, under which Mr. Palmer brought his claim. Section 1 of the Wun-

derlich Act provides that, "[t]he disputes clause included in government contracts is intended, absent fraud or bad faith, to provide a quick and efficient administrative remedy and to avoid vexatious and expensive and, to the contractor, ruinous litigation." The small claims procedure and the Wunderlich Act were created to make claims more expeditious, and the ability to appeal any GSBCA decision, absent fraud in the proceedings, would be counteractive to that goal.

The *amicus curiae* also cites to *Martin J. Simko Constr., Inc. v. United States*, 852 F.2d 540 (Fed.Cir.1988), which vacated that part of the Claims Court's decision that it lacked jurisdiction over the government's fraud-based defense and counterclaims. The *amicus curiae* cited to this case, because it contended that "this Court used a broad definition of fraud to determine that a Government counterclaim and plea in fraud did not have to be submitted to the CO in order for the Claims Court to assert jurisdiction on those issues." *Amicus Curiae Br.* at 8. *Simko* explains that statutory language should be interpreted according to its ordinary meaning unless the legislative history clearly indicates otherwise. *Id.* at 542–43. This is sometimes referred to as the "plain meaning" rule. Here, as we explained above, the legislative history, as we read it, suggests that "fraud" be limited to fraud in the proceedings. Further, *Simko* cites to 41 U.S.C. §§ 604, 605(a), noting that the congressional intent behind these two provisions was to permit review of all claims, including substantive fraud. However, that case was discussing government counterclaims, which is not at issue in Mr. Palmer's case, and was not under the small claims procedure as Mr. Palmer's is.

## II.

█▌█▌ Mr. Palmer further argues that on reconsideration the GSBCA wrongly failed to apply its Rule 133(a)(3), which provides, "The [GSBCA] may relieve a party from the operation of a final decision

or order for fraud, misrepresentation, or other misconduct of an adverse party." Mr. Palmer asserts that this rule should have been applied by the GSBCA because the GSA misled him. However, Mr. Palmer's Rule 133 argument here merely reasserts the same claims that were denied by the GSBCA on May 12, 1997; this argument addresses the GSBCA's proceedings only nominally, and really concerns the conduct of the sale. Further, under Rule 133, fraud and the other wrongs must have been committed by "an adverse party." At the time of the sale of the Bronco, however, GSA was not an adverse party, which implies pending litigation, for there was none then.

We compare Rule 133 with the Rules of Civil Procedure, specifically Rule 60(b) for relief from a judgment or an order. Rule 60(b) states:

> **Mistake; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: ... (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of "an adverse party;"

Rule 133 and Rule 60 are both Rules that are applied when final decisions can be reopened for fraud. Rule 60(b) has been interpreted to mean fraud in the proceedings. *See, e.g., Stridiron v. Stridiron,* 698 F.2d 204, 207 (3d Cir.1983) ("To prevail [under Rule 60(b)(3) ], the movant must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case."); *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1339 (5th Cir.1978) ("Rule [60(b)(3) ] is aimed at judgments which were unfairly obtained, not at those which are factually incorrect."); *see also Hazel–Atlas Co. v. Hartford Empire Co.,* 322 U.S. 238, 245, 64 S.Ct. 997, 88 L.Ed. 1250 (1944) ("The inherent power of a federal court to investigate whether a judgment was obtained by

fraud, is beyond question."). Because the purpose of Rule 133 is similar to that of Rule 60(b), we conclude, therefore, that Rule 133 was not applicable to the only type of fraud alleged by Mr. Palmer, fraud in the contract.

## CONCLUSION

We hold that we lack jurisdiction over this appeal because Mr. Palmer has not made a non-frivolous allegation of fraud in the board proceedings, the only type of fraud for which appeals to this court are permitted under section 9(d) of the Contract Disputes Act of 1978, 41 U.S.C. § 608(d).

The appeal is therefore

*DISMISSED.*

## COSTS

Appellant to bear costs.