# United States Court of Appeals
# for the Federal Circuit

---

**STATE OF VERMONT,**
*Plaintiff-Appellee*

**v.**

**MPHJ TECHNOLOGY INVESTMENTS, LLC,**
*Defendant-Appellant*

---

2015-1310

---

Appeal from the United States District Court for the District of Vermont in No. 2:14-cv-00192-wks, Judge William K. Sessions III.

---

Decided: September 28, 2015

---

BRIDGET ASAY, Vermont Office of the Attorney General, Montpelier, VT, argued for plaintiff-appellee. Also represented by BENJAMIN D. BATTLES, NAOMI SHEFFIELD.

WILLIAM BRYAN FARNEY, Farney Daniels PC, Georgetown, TX, argued for defendant-appellant. Also represented by STEVEN R. DANIELS; DAVID P. SWENSON, Minneapolis, MN.

---

Before PROST, *Chief Judge,* NEWMAN, and O'MALLEY, *Circuit Judges.*

O'MALLEY, *Circuit Judge*.

On May 8, 2013, Plaintiff-Appellee State of Vermont ("Vermont" or "the State") filed a state court action against Defendant-Appellant MPHJ Technology Investments LLC ("MPHJ") alleging violations of the Vermont Consumer Protection Act, 9 V.S.A. §§ 2451 *et seq.* ("VCPA"). The complaint alleged that letters mailed to Vermont businesses informing them that they may be infringing certain patents were deceptive and otherwise violative of the VCPA. MPHJ removed the case twice to the United States District Court for the District of Vermont, once under the State's original complaint ("original complaint") and once under the State's amended complaint ("amended complaint"). The district court remanded the case to state court both times. Before this court is MPHJ's appeal of the district court's second remand order. Because removal under § 1442(a)(2) is not authorized in the circumstances at issue here, and MPHJ does not appeal the district court's other removal rulings in the second remand order, we affirm.

## I. BACKGROUND

MPHJ is a non-practicing entity incorporated in Delaware that acts through a variety of shell corporations incorporated in many states. Beginning in September 2012, businesses in Vermont began to receive a series of letters from one or more of the MPHJ shell corporations. These letters alleged potential infringement of MPHJ's patents and requested that the recipients either purchase licenses or confirm that they were not infringing the patents. Although the content and subject matter of MPHJ's patents are irrelevant to this appeal, they generally cover systems in which computers are networked and connected to a scanner, such that scanned documents are sent directly to employee email addresses as PDF attachments.

MPHJ's letters to each Vermont business followed a similar format and involved the same sequence of events. The first letter a business would receive stated, "We have identified your company as one that appears to be using the patented technology," and gave a list of questions that the company needs to investigate regarding its computer server to determine if it is infringing. Exhibit A to Consumer Protection Complaint at 1, *Vermont v. MPHJ Tech. Invs., LLC*, No. 2:14-cv-00192, 2015 U.S. Dist. LEXIS 3309 (D. Vt. Jan. 9, 2015), ECF No. 1. The letter explained that these questions were based on "[o]ur research, which includes review of several marketplace trends and surveys," and that "you should enter into a license agreement with us at this time." *Id*. at 3-4. It further stated that "we have had a positive response from the business community to our licensing program." *Id*.

The second and third letters were sent from the law firm of Farney Daniels PC, MPHJ's counsel. They would routinely arrive a few weeks after the first letter and second letter, respectively, if MPHJ did not hear back from the recipient. Both stated that the recipient's non-response to the previous letters was taken as an admission of infringement. And, both implied that litigation would commence if the recipient did not enter into a license agreement. *See* Exhibit B to Consumer Protection Compl. at 1, *MPHJ*, 2015 U.S. Dist. LEXIS 3309 (No. 2:14-cv-00192), ECF No. 1.

In response to complaints from the Vermont business community about these letters, the State filed its original complaint against MPHJ on May 8, 2013 in state court. The original complaint asserted a single cause of action under the Vermont Consumer Protection Act, 9 V.S.A. § 2453(a). Under this cause of action, the complaint listed two bases for liability: "unfair trade practices" and "deceptive trade practices." Consumer Protection Compl. at 8, *MPHJ*, 2015 U.S. Dist. LEXIS 3309 (No. 2:14-cv-00192), ECF No. 1. The State alleged that MPHJ engaged in

"unfair trade practices" by, *inter alia*, threating litigation even though litigation was unlikely, targeting small businesses, placing the burden on the recipient to do the investigation, and using shell corporations to minimize liability. *Id.* at 8-9. The State alleged that MPHJ engaged in "deceptive trade practices" by, *inter alia*, stating in its letters that it would bring suit immediately absent a license, the licensing program was successful with many businesses taking part, and the average license was $1000/employee. *Id.* at 9-10. The State sought various forms of relief, including two permanent injunctions:

> (1) A permanent injunction prohibiting Defendant from engaging in any business activity in, into or from Vermont that violates Vermont law.

> (2) A permanent injunction requiring Defendant to stop threatening Vermont businesses with patent-infringement lawsuits.

*Id.*

## A. First Removal

MPHJ timely filed a motion to remove the case to the United States District Court for the District of Vermont on June 7, 2013 ("the first removal"). MPHJ claimed that the court had diversity jurisdiction and that the court had federal question jurisdiction because the validity, infringement, and enforcement of its patents were at issue. The State thereafter moved to remand, arguing that its complaint sounded solely in the VCPA, a state law. MPHJ then filed a motion to dismiss the case for lack of personal jurisdiction and a motion for sanctions under Federal Rules of Civil Procedure ("FRCP") 11. The district court held a hearing on these pending motions on February 25, 2014, and expressed concern that the State's second request for an injunction could prevent MPHJ from sending legitimate assertions regarding patent infringement to Vermont businesses. On March 7, 2014,

the State filed a motion to clarify or amend its complaint to delete the second injunction request ("A permanent injunction requiring Defendant to stop threatening Vermont businesses with patent-infringement lawsuits").

On April 14, 2014, the district court issued an order remanding the case to state court, without deciding the other pending motions, including the State's motion to clarify or amend the complaint. *Vermont v. MPHJ Tech. Invs., LLC*, No. 2:13-cv-170, 2014 U.S. Dist. LEXIS 52132, at \*2 (D. Vt. Apr. 14, 2014). The court concluded that it did not have subject matter jurisdiction. The court stated that, under the test set out in *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013), federal patent law issues were not "necessarily raised" on the face of the State's complaint because the claims in the original complaint did not challenge the validity of the patents nor require any determination of actual infringement. *MPHJ*, 2014 U.S. Dist. LEXIS 52132, at \*17. The court also concluded that the original complaint did not raise a "substantial" federal question under *Gunn*, as any possible federal question would at best involve "application of existing patent law to the facts of this case," with no wide-reaching determinations about patent law itself. *Id.* at \*27. The court also determined that there was no diversity jurisdiction. *Id.* at \*29.

On May 13, 2014, MPHJ filed a notice of appeal of the remand decision to this court and petitioned this court for a writ of mandamus, claiming that the district court abused its discretion. Upon return to the state court, the State filed its amended complaint on May 7, 2014. During a subsequent motions hearing, the state court indicated that, because MPHJ had not yet answered, the State was entitled to amend its complaint as a matter of right under state court rules. Exhibit 1 of Vermont's Mot. to Expedite Proceedings at 37-38, *MPHJ*, 2015 U.S. Dist. LEXIS 3309 (No. 2:14-cv-00192), ECF No. 3. Despite having acknowledged that, however, the state court

ultimately granted the State's motion to amend at the same time it denied MPHJ's motion to dismiss for lack of personal jurisdiction. Exhibit 3-12 to MPHJ's Notice of Removal at 2, 6, *MPHJ*, 2015 U.S. Dist. LEXIS 3309 (No. 2:14-cv-00192), ECF No. 1. On August 11, 2014, this court held that it did not have jurisdiction over either the appeal or the mandamus petition by virtue of 28 U.S.C. § 1447(d). *Vermont v. MPHJ Tech. Invs., LLC*, 763 F.3d 1350, 1352 (Fed. Cir. 2014). Section 1447(d) provides that a remand order to a state court "is not reviewable on appeal or otherwise," with a couple of specific, statutorily-provided exceptions. *Id.* at 1353. The Supreme Court has concluded that this prohibition applies only to remands based on 28 U.S.C. § 1447(c), which includes the district court's first remand order. *Id.*

## B. Second Removal

MPHJ filed an answer and counterclaims to the State's amended complaint on September 9, 2014. MPHJ claimed that the State, by requesting an injunction that required MPHJ's compliance with "Vermont law," sought to compel MPHJ to comply with the Vermont Bad Faith Assertions of Patent Infringement Act ("BFAPIA"), 9 V.S.A. §§ 4195–99. The BFAPIA was passed on May 22, 2013 and became effective on July 1, 2013, after the State filed the original complaint and while this case was pending in federal district court after the first removal. Its key provision, 9 V.S.A. § 4197, defines the factors that a court can consider in determining if a person made a "bad faith assertion of patent infringement," including, among others, the contents of the demand letter, the extent of any pre-assertion investigation, demands for payment of a license fee in an unreasonably short time, and deceptive assertions of infringement.

In its answer, MPHJ asserted that the BFAPIA was preempted by federal law because it permitted the State to bar MPHJ's infringement assertions without a showing

of objective baselessness, contrary to our precedent in *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367 (Fed. Cir. 2004). MPHJ also asserted six counterclaims. It sought a declaratory judgment that the BFAPIA is invalid or preempted by the First, Fifth, and Fourteenth Amendments (counterclaim 1), or by Title 35 of the U.S. Code, the Supremacy Clause, and the Patent Clause (counterclaim 2). MPHJ also sought a declaratory judgment that its patents were valid (counterclaim 3) and infringed (counterclaim 4), or at least that it was not objectively baseless for a reasonable person to believe so. Finally, MPHJ sought a declaratory judgment that the VCPA is invalid or preempted by the First, Fifth, and Fourteenth Amendments, the Supremacy and Patent Clauses, and Title 35 of the U.S. Code (counterclaim 5) and that it did not violate the VCPA (counterclaim 6). Based on these counterclaims, MPHJ sought relief from both the BFAPIA and the VCPA as applied to it.

On the same day that MPHJ filed its answer and counterclaims, it filed a second notice of removal ("the second removal") to federal court under 28 U.S.C. § 1442(a)(2) ("federal officer removal statute"), 28 U.S.C. § 1443 ("civil rights removal statute"), and 28 U.S.C. § 1454 ("patent removal statute"). MPHJ claimed that the amended complaint "now seeks an injunction requiring MPHJ to comply with the [BFAPIA]," and that enforced compliance with the BFAPIA affects the validity of 35 U.S.C. §§ 261, 271, 284, 285 and 287, as well as the First, Fifth, and Fourteenth Amendments, the Supremacy Clause, and the Patent Clause of the Constitution. MPHJ's Notice of Removal at 2, 4, *MPHJ*, 2015 U.S. Dist. LEXIS 3309 (No. 2:14-cv-00192), ECF No. 1. MPHJ claimed that its notice of removal was timely because it was filed within thirty days of the August 28, 2014 state court order granting the motion to amend the complaint. *Id.* at 4. The State, in response, filed a motion to remand, insisting that the BFAPIA was not part of its amended

complaint, the validity of MPHJ's patents was not at issue, and the second removal was untimely.

The district court issued an opinion on the second notice of removal on January 12, 2015. The court found that the State's amended complaint never "revived" MPHJ's right to remove in the first place. *MPHJ*, 2015 U.S. Dist. LEXIS 3309, at *12. According to the court, the State's request for injunctive relief, "read in the context of the State's pleading," made clear that the State did not seek relief under the BFAPIA. *Id.* at *13. The district court further found that, even if the passage of the BFAPIA by the Vermont legislature provided a new opportunity for removal, the second removal was untimely. Vermont enacted the BFAPIA prior to the initial remand decision, and MPHJ cited the Act in its opposition to the first motion to remand, filed on September 18, 2013. The district court found, therefore, that MPHJ could have included the BFAPIA as a ground for its first removal and could have moved to amend to add counterclaims at that time. The court concluded that untimeliness under 28 U.S.C. § 1446(b) can be based on evidence of an exchange of documents in the course of litigation that evidences a "party's knowledge of the grounds for removal." *Id.* at *14.

The district court further concluded that the removal, even if timely, failed to meet the requirements of 28 U.S.C. § 1442(a)(2), the federal officer removal statute. The court was "skeptical of Section 1442(a)(2)'s application to a patent case" based on the historical purpose of the statute. *Id.* at *18. In any event, the court held that removal could not be based on § 1442(a)(2) because MPHJ's answer and counterclaims did not "call into question the validity of any federal law," as required by that section. *Id.* The district court found that MPHJ's assertion that the BFAPIA frustrates interests protected by federal statutes and the Constitution was irrelevant in light of its finding that the amended complaint did not require compliance with the BFAPIA. Finally, the court

also declined to allow removal under either 28 U.S.C. § 1443 or 28 U.S.C. § 1454. MPHJ filed a timely notice of appeal to this court, challenging only the district court's timeliness and 28 U.S.C. § 1442 analyses. Remands under § 1442 and § 1443 are exceptions to the bar of § 1447(d). MPHJ has only appealed the district court's decision under § 1442, and not § 1443, however.

## II. JURISDICTION

The parties dispute our jurisdiction over this appeal. The State asserts that we have none and asks that we dismiss the appeal. MPHJ argues that we do have jurisdiction over this appeal and correctly points out that, even if we disagreed with that contention, the appropriate remedy would be a transfer to the Second Circuit, not dismissal. 28 U.S.C. § 1295 defines the scope of this court's jurisdiction. Specifically, it provides that this court has jurisdiction "in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1). Because we find jurisdiction on the basis of at least one of MPHJ's counterclaims, counterclaim 5, we have jurisdiction over this appeal. We, therefore, do not need to assess whether this court could exercise jurisdiction on the basis of MPHJ's other counterclaims or Vermont's claim.

Counterclaim 5 seeks a declaratory judgment that the VCPA is invalid or preempted as applied under the First, Fifth, and Fourteenth Amendments, the Supremacy and Patent Clauses of the Constitution, and Title 35 of the U.S. Code. Ultimately, MPHJ seeks to prevent the State from relying on the VCPA in its action against it.[1]

---

[1] The State is correct that MPHJ did not argue counterclaim 5 as the basis of this court's jurisdiction. Appellee Br. 27. *See* Appellant Br. 22-23; Appellant Reply

"[A] plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is preempted by a federal statute which, by virtue of the Supremacy Clause of the Constitution must prevail, thus presents a federal question over which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." *Lawrence Cty. v. Lead-Deadwood Sch. Dist. No. 40-1*, 469 U.S. 256, 259 n.6 (1985) (quoting *Shaw v. Delta Air Lines Inc.*, 463 U.S. 85, 96 n.14 (1983)). Thus, while the Supremacy Clause does not itself create a cause of action for its violation, *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015), a claim that a state law contravenes a federal statute remains "basically constitutional in nature" because "the application of preempted state law is . . . unconstitutional." *Id.* at 1391 (Sotomayor, J., dissenting). Based on these principles, we have concluded that this court has jurisdiction over a complaint alleging that the state law is preempted by the patent laws. *Biotechnology Indus. Org. v. Dist. of Columbia*, 496

---

Br. 4-6. According to the State, this failure "defeats any claim of jurisdiction based on [that] counterclaim[ ]." Appellee Br. 27. The case the State cites in support of this assertion, *Palmer v. Barram*, 184 F.3d 1373, 1377 (Fed. Cir. 1999), however, does not stand for the proposition that this court can relinquish jurisdiction where it clearly possesses it based on the factual allegations and causes of action claimed in the case. We must always fulfill our obligation to satisfy ourselves of our jurisdiction over any appeal. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986).

The State also argues that we are bound by the motions panel determination that this court lacked jurisdiction to consider the first remand order. Appellee Br. 24. That argument merits scant attention. The order relating to the appeal of the first remand was predicated on § 1447(d), which is not at issue here.

F.3d 1362, 1368 (Fed. Cir. 2007) (deciding under pre-America Invents Act ("AIA") version of § 1295(a)(1) that, where a complaint seeks to enjoin enforcement of state law on grounds that it is preempted by the patent laws, this court has jurisdiction) (citing *Shaw*, 463 U.S. at 96 n.14).

Before the passage of the AIA, it was also well established that only complaints filed by one seeking to prevent enforcement of state law would give rise to federal jurisdiction under either 28 U.S.C. § 1331 or § 1338, or to this court's appellate jurisdiction under 28 U.S.C. § 1295(a)(1). *See Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) ("Federal jurisdiction cannot be predicated on an actual or anticipated defense . . . Nor can federal jurisdiction rest upon an actual or anticipated counterclaim."); *Holmes Group, Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 831 (2002) ("a counterclaim—which appears as part of the defendant's answer, not as part of the plaintiff's complaint—cannot serve as the basis for 'arising under' jurisdiction" under § 1295(a)(1)).

The AIA amended 28 U.S.C. §§ 1338 and 1295(a)(1) and added 28 U.S.C. § 1454, however. Leahy-Smith America Invents Act, Pub. L. No. 112-29, 125 Stat. 284 (2011). § 1338(a) originally read:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases.

and now, post-AIA, reads:

> The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. No State court shall

have jurisdiction over any claim for relief arising under any Act of Congress relating to patents . . . .

§ 1295(a)(1) was changed from:

(a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

(1) of an appeal from a final decision of a district court of the United States . . . if the jurisdiction of that court was based, in whole or in part, on section 1338 of this title . . . ;

to:

(a) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—

(1) of an appeal from a final decision of a district court of the United States . . . in any civil action arising under, or in any civil action in which a party has asserted a compulsory counterclaim arising under, any Act of Congress relating to patents . . . .

The AIA also added § 1454, a new removal provision, which reads:

(a) In general.  A civil action in which any party asserts a claim for relief arising under any Act of Congress relating to patents . . . may be removed to [federal] district court . . . .

These changes are commonly referred to as the "Holmes Group fix."  *See, e.g.*, *MPHJ*, 2015 U.S. Dist. LEXIS 3309 (citing *Andrews v. Daughtry*, 994 F. Supp. 2d 728, 731-32 (M.D.N.C. 2014) (citing Joe Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 FED. CIR. B.J. 539, 539 (2012))). *See generally* Paul M. Schoenhard, *Gaps, Conflicts and Ambiguities in*

*the Federal Courts' Post-AIA Patent Jurisdiction*, INTELL. PROP. & TECH. L.J., July 2013, at 20-23.  In other words, they were intended to provide federal courts, and this court specifically, with a broader range of jurisdiction; that is, with jurisdiction over claims arising under the patent laws *even* when asserted in counterclaims, rather than in an original complaint.  At the same time, the changes to § 1338 expressly remove such claims from the ambit of state court jurisdiction.  Taken together, these provisions mean that seeking relief from application of state law on preemption grounds in a compulsory counterclaim will vest jurisdiction in this court as long as it "arises under" the patent laws.

Turning to counterclaim 5, we first assess whether it is a compulsory counterclaim.  Under Second Circuit law:

> Whether a counterclaim is compulsory or permissive turns on whether the counterclaim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, and this Circuit has long considered this standard met when there is a logical relationship between the counterclaim and the main claim.

*Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 209 (2d Cir. 2004) (internal citations and quotation marks omitted). The "logical relationship" test does not require "an absolute identity of factual backgrounds," but the "essential facts of the claims [must be] so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit."  *Id.* (internal citations and quotation marks omitted); *see also id.* at 210 ("The essential facts for proving the counterclaims and the ECOA claim are not so closely related that resolv-

ing both sets of issues in one lawsuit would yield judicial efficiency.").[2]

Counterclaim 5 meets the requirements of the "logical relationship" test. The State's claims are premised on the alleged unlawful nature of MPHJ's patent infringement inquiry letters under the VCPA. According to the State's amended complaint, the essential facts involved in proving whether MPHJ violated the VCPA include whether MPHJ in fact "[s]tat[ed] that litigation would be brought against the recipients, when Defendant was neither prepared nor likely to bring litigation," "[t]arget[ed] small businesses that were unlikely to have the resources to fight patent-litigation, or even pay patent counsel," and "[s]en[t] letters that threatened patent-infringement litigation with no independent evidence that the recipients were infringing its patents," among a series of other allegations. First Amended Consumer Protection Compl. at 8, *MPHJ*, 2015 U.S. Dist. LEXIS 3309 (No. 2:14-cv-00192), ECF No. 7. In counterclaim 5, MPHJ asserts that the VCPA would be preempted on the basis of the same essential facts. For example, MPHJ asserts that, "[u]nder at least some circumstances, federal law permits a patent owner to threaten suit even if the patent owner does not

---

[2]      Because the concept of what constitutes a "compulsory counterclaim" now directly impacts our jurisdiction, it is governed by Federal Circuit law, rather than by that of the regional circuits. *Arlington Indus. v. Bridgeport Fittings, Inc.*, 759 F.3d 1333, 1336 (Fed. Cir. 2014) ("[w]e apply our own law, rather than regional circuit law, to questions relating to our own appellate jurisdiction") (quoting *Int'l Elec. Tech. Corp. v. Hughes Aircraft Co.*, 476 F.3d 1329, 1330 (Fed. Cir. 2007)). Because this court has not yet adopted a body of law governing what constitutes a compulsory counterclaim, we turn to Second Circuit law for guidance in this case.

intend to bring suit." MPHJ's Answer and Counterclaims at 26, *MPHJ*, 2015 U.S. Dist. LEXIS 3309 (No. 2:14-cv-00192), ECF No. 20. MPHJ further contends that, "[u]nder federal law, a patent owner may communicate an intention to bring suit for infringement without having conducted, or completed, such investigation as is necessary to satisfy FED. R. CIV. P. 11." *Id.* at 27. MPHJ also asserts that "Counterclaim Defendants have no basis to allege that 35 U.S.C. § 271 exempts from liability for infringement those companies that are smaller than a certain size . . . ." *Id.* The same underlying facts are involved in both the State's claim and counterclaim 5. The acts that the State alleges entitle it to relief under the VCPA are the same acts that MPHJ claims are protected under federal law. We find, therefore, that counterclaim 5 is a compulsory counterclaim.

Second, we must determine whether counterclaim 5 "aris[es] under" the federal patent laws, as 28 U.S.C. § 1295(a)(1) requires. We conclude that it does. As noted, we concluded in *BIO* that a preemption claim does "arise under" the patent laws. *BIO*, 496 F.3d at 1368. Since *BIO*, however, the Supreme Court has provided additional guidance on whether and when an action arises under the patent laws. *Gunn*, 133 S. Ct. 1059 (2013). We, thus, consider anew whether a claim such as that in counterclaim 5 arises under the patents laws for purposes of § 1295(a)(1).

An action "aris[es] under" federal law: (1) where "federal law creates the cause of action asserted," and (2) in a "special and small category of cases" in which arising under jurisdiction still lies." *Gunn*, 133 S. Ct. at 1064. For this second category of cases, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* at 1065. "Arising under" is interpreted identi-

cally and interchangeably under 28 U.S.C. § 1331 and 28 U.S.C. § 1338(a). *Id.* at 1064. This court recently clarified that the interpretation of § 1338(a) necessarily implicates interpretation of § 1295(a)(1), and vice versa. *Madstad Eng'g, Inc. v. U.S. Patent & Trademark Office,* 756 F.3d 1366, 1370-71 (Fed. Cir. 2014) ("Through 28 U.S.C. § 1338(a), Congress placed the resolution of actions arising under an Act of Congress relating to patents exclusively within the federal courts. Through 28 U.S.C. § 1295(a)(1), Congress placed appeals from such matters exclusively within the province of the Federal Circuit"). This court has since applied the *Gunn* test to assess "arising under" jurisdiction under § 1295(a)(1). *See Jang v. Boston Sci. Grp.,* 767 F.3d 1334, 1337–38 (Fed. Cir. 2014) (state law contract dispute regarding royalties under patent license met *Gunn* test because analysis required determination of infringement and validity of underlying patents); *Krauser v. BioHorizons, Inc.,* 753 F.3d 1263, 1268–70 (Fed. Cir. 2014) (state law claim for ownership over a dental implant system did not meet *Gunn* test).

Because counterclaim 5 is not a cause of action created by the federal patent laws, we ask whether it falls into the "special and small category of cases" in *Gunn*. *Gunn*, 133 S. Ct. at 1064. Resolution of a federal question is clearly "necessary" to MPHJ's counterclaim, as proving preemption of the VCPA by federal patent laws would necessarily require proving that the patent laws preclude enforcement of the VCPA as applied. Thus, MPHJ's right to relief on the counterclaim depends on an issue of federal law. The federal issue is also "actually disputed." Indeed, the federal issue here "is the central point of dispute." *Id.* at 1065.

Under *Gunn*, the "substantiality" inquiry looks to "the importance of the issue to the federal system as a whole" and not the significance "to the particular parties in the immediate suit." *Id.* at 1066 (citing *Grable & Sons Metal*

*Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)). In other words, we focus on the broader significance of the federal issue and ask ourselves whether allowing state courts to resolve these cases undermines "the development of a uniform body of [patent] law." *Id.* at 1066-67 (quoting *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 162 (1989)). Counterclaim 5 also passes this test. Whether federal patent laws preempt or invalidate the VCPA as applied has considerable significance beyond the current case. A hypothetical finding that the VCPA is not invalid or preempted in state court would affect the development of a uniform body of patent law, as such a decision would be binding in Vermont, but would not be in other states with similar laws or in federal court. The facts of this case are fundamentally unlike *Gunn*, in which the Court recognized that the federal issue was a "backward-looking . . . legal malpractice claim" that would be unlikely to have any "preclusive effect" on future patent litigation and was, therefore, not substantial. *Id.* at 1067. As an "as applied" challenge, counterclaim 5 depends to a certain extent on the specific facts of this case, but the resolution of this case would assist in delineating the metes and bounds of patent law and clarifying the rights and privileges afforded to patentees in pursuing patent infringement claims.

Finally, we find that the last prong of the *Gunn* test, "capable of resolution in federal court without disrupting the federal-state balance," is satisfied. *Gunn*, 133 S. Ct. at 1065; s*ee Grable*, 545 U.S. at 310. Allowing a state court to resolve a patent law preemption question risks "inconsistent judgments between state and federal courts." *Jang*, 767 F.3d at 1337 (quoting *Forrester Envtl. Servs. v. Wheelabrator Techs., Inc.*, 715 F.3d 1329, 1334 (Fed. Cir. 2013)). We cannot permit such a result when Congress has vested exclusive appellate jurisdiction over patent cases in this court. We conclude

that, because the requirements of § 1295(a)(1) are satisfied, we have jurisdiction over this appeal.

## III. DISCUSSION

### A. Standard of Review

When analyzing "a procedural issue not unique to patent law," we apply the law of the applicable regional circuit, here the Second Circuit. *Versata Software, Inc. v. Callidus Software, Inc.*, 780 F.3d 1134, 1136 (Fed Cir. 2015). The Second Circuit reviews a district court's removal determination, and a district court's analysis of subject matter jurisdiction, *de novo*. *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 135 (2d Cir. 2008). Where, as here, the defendant asserts federal jurisdiction in a removal petition, the defendant has the burden of establishing that removal is proper. V*eneruso v. Mount Vernon Neighborhood Health Ctr.*, 933 F. Supp. 2d 613, 618 (S.D.N.Y. 2013) (citing *United Food & Commercial Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)), *aff'd*, 586 F. App'x 604 (2d Cir. 2014).

Section 1442(a) is commonly known as the federal officer removal statute and normally authorizes removal by federal officers sued in state court. Section 1442(a)(2) expands the circumstances in which removal is authorized to allow owners of federally-derived property rights to remove a cause of action to federal court—even where a federal officer is not a defendant—if the action "affects the validity of any law of the United States." § 1442(a)(2). Removal under § 1442(a)(2) requires that (1) an action be instituted in state court; (2) the action be against or directed to the holder of a property right; (3) the property right be derived from a federal officer; and (4) the action would "affect" the validity of a federal law. *Id.* MPHJ asserts that its patents were property rights, derived from the Patent and Trademark Office pursuant to Title 35 of the U.S. Code, and that the State's action—which it

asserts would frustrate MPHJ's ability to assert its patent rights—"affects" the interests protected under the Patent Act.  As with other removal decisions, we review *de novo* a district court's determination of whether removal is authorized under § 1442(a)(2).  *Isaacson*, 517 F.3d at 135.

## B.  No Basis for Removal

On appeal, the parties dispute whether: (1) MPHJ's second removal was timely and (2) the requirements for removal under 28 U.S.C. § 1442 are met.  With respect to the requirements for removal, the State asserts that: patent rights are not property rights within the meaning of § 1442(a)(2); because the patents at issue were transferred to MPHJ from the original patent owner, they were not directly "derived from a federal officer"; and because the state court complaint neither alleges a violation of nor seeks relief under the BFAPIA, there is no risk that the state court action can affect the validity of federal law.  MPHJ vigorously disputes each of these points.  Importantly, however, MPHJ concedes that, if the BFAPIA is not at issue in the state court action, its assertions that the current action would affect its rights under the Patent Act and, thus, affect the validity of that act, are not well taken.   Oral  Argument  at  05:34-6:20, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=20 15-1310.mp3. Because it is dispositive, we address only whether claims under the BFAPIA are in the amended complaint.  We find that they are not.  Because the amended complaint neither asserts claims under, nor requests an injunction requiring MPHJ to comply with, the BFAPIA, we find there was no basis in the amended complaint for removal under 28 U.S.C. 1442(a)(2).  We, therefore, affirm.

At this stage in the proceedings, we do not consider whether the action was removable under the original complaint.  As we explained in our decision on appeal of the first remand, a remand order to a state court under

§ 1447(c) is immune from review under § 1447(d). *MPHJ*, 763 F.3d at 1353; *see Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711–12 (1996). Therefore, 28 U.S.C. § 1446(b)(1), which sets forth the procedural requirements for the removal of civil actions removable based on the allegations in an original complaint, does not apply.[3]

We are left to decide, therefore, if the previously non-removable action became removable under § 1446(b)(3). The district court framed the issue as "whether the Amended Complaint 'revived' MPHJ's right to remove after its first removal was unsuccessful." *MPHJ*, 2015 U.S. Dist. LEXIS 3309, at *12. The court noted that "an amendment of the complaint will not revive the period for removal if a state court case previously was removable . . . ,' [although] a different result generally is reached if the pleading amendment provides (1) a 'new basis for removal' or (2) 'changes the character of the litigation so as to make it substantially a new suit.'" *Id.* (quoting *Braud v. Trans. Serv. Co. of Illinois*, 445 F.3d 801, 806 (5th Cir. 2006)). The court then proceeded to determine whether the intervening passage of the BFAPIA by the Vermont legislature "revived" MPHJ's right to remove. Because the original complaint was not removable, however, it is unnecessary to search for a *new* basis for removal in the amended complaint, but rather only necessary to search for *a* basis for removal under § 1446(b)(3). Semantics aside, we agree with the district court that there is no

_____

[3]      There is no dispute that the original complaint did not invoke the BFAPIA. *See, e.g.*, Appellant Reply Br. 17-18 ("At the time [the State's original complaint was filed], the BFAPIA was not part of state law. Thus, obviously, the original complaint did not seek relief involving the BFAPIA. Indeed, in a rare agreement, the State, MPHJ, and the district court all agree the original complaint did not invoke the BFAPIA.")

basis for removal because the injunction the State seeks does not include compliance with the BFAPIA.

MPHJ's Notice of Removal clearly bases removal under § 1442(a)(2) solely on its claim that the BFAPIA is inconsistent with and preempted by federal law. *See* MPHJ Notice of Removal at 3, *MPHJ*, 2015 U.S. Dist. LEXIS 3309 (No. 2:14-cv-00192), ECF No. 1 ("Removal of this case is authorized under 28 U.S.C. § 1442(a)(2) because the Amended Complaint [seeks to] require MPHJ to comply with the [BFAPIA]"). As the district court noted, MPHJ's Opp'n to the State's Mot. to Remand cites only to the BFAPIA as "affect[ing] the validity" of federal statutes, 35 U.S.C. §§ 261, 271, 284, 285 and 287, and certain parts of the Constitution. *MPHJ*, 2015 U.S. Dist. LEXIS 3309, at *18. And, as noted, MPHJ conceded at oral argument that whether there is a basis for removal under § 1442(a)(2) hinges entirely on whether the State seeks compliance with the BFAPIA under its amended complaint. Oral Argument at 05:34-6:20, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2015-1310.mp3.

The parties dispute, however, whether the amended complaint either implicates or requests an injunction requiring compliance with BFAPIA. The State amended its original complaint to delete one request for an injunction, leaving only one. The remaining injunction requested reads:

> (1) A permanent injunction prohibiting Defendant from engaging in any business activity in, into or from Vermont that violates Vermont law.

The issue is, thus, whether the phrase "Vermont law" encompasses not only the VCPA, but also the BFAPIA. The State has consistently argued that the BFAPIA is not part of its amended complaint, just as it was not part of its original complaint. In its motion to remand, it stated that it "did not add or change any allegations or change

its claim. The amendment removed a single phrase in the request for relief." Vermont's Mot. to Remand at 6, *MPHJ*, 2015 U.S. Dist. LEXIS 3309 (No. 2:14-cv-00192), ECF No. 22-1. According to the State, the amended complaint "merely alleges that MPHJ's actions—sending unfair and deceptive licensing solicitations into Vermont—violate Vermont's consumer protection statute." *Id.* at 13.

MPHJ, on the other hand, maintains that the amended complaint includes the BFAPIA—i.e., a provision of Vermont law—and that the State cannot now "disavow that its suit seeks this relief." MPHJ's Resp. in Opp'n to Mot. to Remand at 16 n.31, *MPHJ*, 2015 U.S. Dist. LEXIS 3309 (No. 2:14-cv-00192), ECF No. 26. The state legislature passed the BFAPIA between the time of the filing of the original complaint and the State's motion to amend the complaint. MPHJ argues that, therefore, although the amendment to the State's complaint did not add any new text, it implicitly added new meaning to the phrase "Vermont law."

The district court found MPHJ's interpretation of the amended complaint unpersuasive. Specifically, the court found that the State made explicit efforts to limit its reach to MPHJ's purported violations of the VCPA. The title of the amended complaint, "First Amended Consumer Protection Complaint," tracks the title of the original complaint, "Consumer Protection Complaint," which neither party disputes concerned only the VCPA. First Amended Consumer Protection Compl., *MPHJ*, 2015 U.S. Dist. LEXIS 3309 (No. 2:14-cv-00192), ECF No. 7. The first sentence states that the Vermont Attorney General "brings this suit under the Vermont Consumer Protection Act." *Id.* at 1. The sole allegations in the amended complaint are that MPHJ violated the VCPA. Importantly, the BFAPIA does not appear at all on the face of the complaint. Thus, the district court found that the amended complaint did not "revive" MPHJ's ability to remove

the case. *MPHJ*, 2015 U.S. Dist. LEXIS 3309, at \*13. Notwithstanding this finding, however, the district court proceeded to analyze the removal under § 1442(a)(2). Unsurprisingly, it concluded, "the Amended Complaint is brought exclusively under the VCPA, and does not seek relief under any other statute or legal provision. The Court therefore declines to allow removal under Section 1442(a)(2)." *Id.* at \*18.

On appeal, the parties reiterate their positions with respect to the BFAPIA. MPHJ assigns significance to Vermont's decision not to limit its injunction explicitly to compliance with the VCPA. Since March 7, 2014, the date on which Vermont sought leave to amend its complaint, was after the date the BFAPIA became effective, July 1, 2013, MPHJ argues that "the Amended Complaint indisputably [seeks] to compel MPHJ to comply with the BFAPIA." Appellant Br. 11. MPHJ also argues that Vermont Attorney General William Sorrell made clear in an interview published by Law 360 that the BFAPIA was specifically designed to prohibit MPHJ from sending its inquiry letters. *Id.* at 8.

The State opposes MPHJ's characterization of the amended complaint as seeking relief under the BFAPIA. First, the State correctly points out that the amended complaint never mentions that statute by name. Appellee Br. 7. Second, the State says its *deletion* from the original complaint narrowed its request for relief, not broadened it. *Id.* at 30. Third, the State argues that it did not assert a claim against MPHJ under the BFAPIA because the conduct the State challenges pre-dated the statute: "[t]hat statute was passed in May 2013, after MPHJ stopped sending the letters described in the State's complaints, and after the State filed this action." *Id.* at 27.

We resolve this issue based on the State's concession at oral argument and our own understanding of the amended complaint. Counsel for the State conceded at

oral argument that the BFAPIA is not—and never was—part of the State's amended complaint.  Indeed, when asked whether counsel would stipulate that the amended complaint does not cover the BFAPIA, counsel responded:

> A: We have asserted that repeatedly in filings in multiple courts, that we are seeking, we are not asserting a claim under the new statute and we are not seeking relief under that statute.
>
> Q: You mean not seeking an injunction that would require them to comply with that statute?
>
> A: No, we're not, your Honor.

Oral Argument at 14:30-15:45, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2015-1310.mp3.  We hold the State to its concession at oral argument; it has expressly disavowed any request to enjoin MPHJ's conduct under the BFAPIA.

Even if the State had not conceded at oral argument that the injunction does not include a request for an injunction under the BFAPIA, we are not persuaded that MPHJ's reading of the amended complaint is a fair one. We begin with the language of the amended complaint, which never mentions the BFAPIA on its face.  Rather, as the State explained, the amended complaint is identical to the original complaint except that the State's original request for an injunction requiring MPHJ to stop threatening Vermont businesses with patent infringement lawsuits has been *deleted*.  As the district court pointed out, the amended complaint is entitled "First Amended Consumer Protection Complaint," and the first sentence states that the suit was brought "under the Vermont Consumer Protection Act."  And under "III. Statutory Framework" of the amended complaint, the only statute listed is the VCPA.  "V. Cause of Action: Unfair and Deceptive Trade Practices" likewise mentions only the VCPA.  The language of "Unfair and Deceptive Trade

Practices" comes directly from VCPA § 2453(a) and has no counterpart in the BFAPIA. The word "unfair" is absent from the BFAPIA, and while the word "deceptive" appears once in § 4197, there is no mention of "trade practices." 9 V.S.A. § 4197(b)(7).[4] When read in its entirety, it is clear that the phrase "Vermont law"—as used in the amended complaint—refers only to the VCPA.

This interpretation finds further support in the record evidence regarding the parties' understanding of the amendment and its purpose. The district court expressed concern about the State's second injunction request at a hearing to discuss pending motions following the first removal.[5] Less than two weeks later, the State filed its motion to clarify and/or amend the complaint. In the motion, the State explained that it did not intend to prevent MPHJ from engaging in lawful patent-enforcement activities. Rather, recognizing that "such broad injunctive relief may be preempted by federal patent law," the State sought to *limit* the relief sought "by

---

[4] The BFAPIA lists circumstances in which "[t]he claim or assertion of patent infringement is deceptive" as a factor which would militate in favor of finding a violation of the provisions of the Act. 9 V.S.A. § 4197(b)(7).

[5] The district court observed at the February 25, 2014 hearing: "This seems to suggest that in Vermont, they're not allowed to enforce a patent. And doesn't that, unto itself, raise a patent law issue which would be preempted . . . .," and, "But when you, in your complaint, suggest that you are requesting an order to prevent the exercise of patent rights, broadly speaking, not related in any way to deception or violation of the [VCPA], then that's–is that a horse of a different color?" Transcript of Mots. Hearing at 11-13, *MPHJ*, No. 2:13-cv-170, 2014 U.S. Dist. LEXIS 52132 (D. Vt. Feb. 25, 2014), ECF No. 50.

removing paragraph two" of its injunction requests. Vermont's Conditional Mot. to Clarify And/Or Amend Compl. at 2, *MPHJ*, No. 2:13-cv-170, 2014 U.S. Dist. LEXIS 52132, ECF No. 45. The State further explained explicitly in its motion to amend that "[t]his proposed revision does not change the State's claim as originally filed" and "[t]his change does not alter the nature of the State's claim, which arises from Vermont's consumer protection act." *Id.* at 2-3. The timing and nature of the proposed amendment show that it was clearly a response to the district court's criticism of the scope of the second injunction request. The purpose of the amendment was to *narrow* the scope of the complaint, not broaden it.

Finally, although MPHJ relies on a Law 360 article featuring an interview with Vermont Attorney General William Sorrell, which it originally included as an exhibit to its notice of removal, that article supports the State's position. In that interview, which was published two months after the State filed its conditional motion to amend, Sorrell was asked whether the lawsuit against MPHJ was filed under the VCPA:

> Q: So the case against MPHJ was filed under the then existing consumer protection law?
>
> A: Yes.

Exhibit 3-9 to Notice of Removal at 170, *MPHJ*, No. 2:14-cv-00192, 2015 U.S. Dist. LEXIS 3309, ECF No. 1-12. And, when asked about how the BFAPIA would be enforced, Sorrell's response revealed that he did not think lawsuits had been filed yet under the BFAPIA:

> Q: Concerning Vermont's new consumer protection law, has thought been given to what analysis would be required to determine which accused products are covered by the claims of the asserted patents?

> A: . . . I think when the first lawsuits are filed under the new Vermont statute, I'm sure there will be more flesh added to the bones of the statute through those cases . . . .

*Id.* at 171. In these circumstances, we see no reason to disturb the district court's finding that the State is not seeking an injunction that requires MPHJ's compliance with the BFAPIA. Given this conclusion, if the State prevails on the merits in state court, it may not seek an injunction requiring MPHJ to comply with the BFAPIA based on the amended complaint. Because MPHJ relies on the BFAPIA as its basis for removal under § 1442(a)(2), the necessary consequence of our decision is that we find no grounds for removal to federal court.

Given these conclusions, we decline to decide whether § 1442(a)(2) applies to intellectual property rights or whether the phrase "derived from" a federal officer means the property right at issue must have been obtained by the removing defendant itself from such an officer, rather than by a predecessor in interest to that defendant. Because MPHJ has not appealed the district court's ruling pursuant to 28 U.S.C. § 1454, we have no occasion to address the timeliness or propriety of MPHJ's attempted removal under that statute or how that newly enacted provision should be interpreted in light of the other amendments to jurisdictional statutes adopted in the AIA.

## IV. CONCLUSION

For the foregoing reasons, we hold that there is no basis for removal to federal court under § 1442(a)(2). We, therefore, affirm.

## AFFIRMED